Provost v. Moulton, No. S409-03 CnC (Katz, J., Dec. 29, 2003)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                      SUPERIOR COURT
Chittenden County, ss.:               Docket No. S409-03 CnC

ROBERT L. PROVOST

v.

BRUCE MOULTON and HEART HOMES OF VERMONT

ENTRY

If we were to agree with Shakespeare's Dromio of Syracuse that "Time is a very bankrupt and owes more than he's worth to season," we would be inclined to use this case as exhibit A. The parties, a tenant and landlord in a commercial lease, dispute the term of a lease that may be as short as five or as long as twenty years and may include the tricky mathematical dilemma of making six, five, five, and five add up to twenty. Tenant Provost contends that the lease was for a twenty-year term, which is still enforceable. Landlord Moulton counters that the lease was only for five years with three renewable terms that were not activated by tenant.

Adding to this embroilment is a possible ambiguity within the lease that suggests an initial six year term.  The crux of this controversy is tied up in tenant's claim that he wants back on to the property, to which he has no right if the lease has expired after devolving into a month to month tenancy at will.

According to the real estate lease signed by tenant and landlord in 1996, the term of the lease was to begin on January 1, 1997 and end on December 31, 2002.  This adds up to six years.  However, under the clause "Lease Payments" the initial lease term is stated to be only five years followed by the option of three additional five year terms.  In a "Memorandum of the Lease Agreement" executed significantly later in April of 1997 to record and acknowledge the original lease within the Milton land records, the "Terms" clause lists the term of the lease to be twenty years.  This was followed by an "Addendum to Lease Agreement" executed in August 1997, which stated that the initial lease term was five years.

The question of whether the terms of the lease is ambiguous is a matter of law for us to decide.  Morrisseau v. Fayette, 164 Vt. 358, 366 (1995).  Establishing ambiguity is not merely a problem of demonstrating conflicting terms.  True ambiguity occurs where the writing and the circumstances surrounding its formation suggest two reasonable interpretations.  Isbrandtsen v. North Branch Corp., 150 Vt. 575, 579 (1988).  In the present case, there is no evidence that either party proposed or negotiated an initial term of longer than five years.  Apart from the paragraph stating that the lease would run from January 1996 to December 2002, there is no other part of the lease or its addendums or the successive correspondence that suggests that the initial term was greater than five years.  Still, in light of the fact that the parties signed the lease containing

the six-year lease term, we cannot interpret the term of the lease without ignoring this term. As such, we find that the term of the lease is ambiguous and turn to the subordinate rules of construction to interpret the meaning of this term. Id.

To interpret the meaning of the ambiguous term of the lease, we consider extrinsic evidence to determine the intent, situation, motives, and understanding evinced by the parties surrounding the contract's formation. Grievance of John Gorruso, 150 Vt. 139, 143 (1988). We find that the lack of any evidence in the parties' dealings concerning an initial six-year term demonstrates a lack of intent to be bound to anything beyond an initial five-year term. There is simply no evidence of either party proposing, negotiating or even mentioning another term. The Memorandum and Addendum that were executed after the lease confirm this understanding and support our finding that the parties intended the initial term to only run for five years. Id. Furthermore, the mathematical isolation of the six-year term within the contract and the evidence surrounding its formation suggest that the parties never contemplated such a term and that its presence is a mere mistake in calculation.

Even tenant's larger theory that the lease was for twenty years is inconsistent with the initial six year theory since the initial six-year term coupled with the three five-year terms would add up beyond twenty, which is the longest term mentioned by any document and is the term that tenant argues should be applied. (Memo. of Law in Support of Mot. for Prel. Inj., Apr. 1, 2003, at 5). To interpret the initial term as six years would amend the total amount time covered by the lease beyond its clearly stated twenty year limit. If it was "far more likely that the parties always intended the initial term to end on December 31, 2002 (a date certain)," (Reply to Def. Opp'n to Pl. Req. for Inj., Aug. 6, 2003, at 2), this would be an oral

modification to the lease not acknowledged by both parties.  This is not a reasonable interpretation since both parties appear to have adhered to the other terms of the lease and tenant gives no evidence of any agreement between him and landlord to the contrary.  The fact that tenant sublet the property and that his subtenant did not leave the property until December 31, 2002 does not evince an alteration between tenant and landlord on the original terms of the lease.  To argue that this fact somehow proves otherwise is to ignore the substantial written and circumstantial evidence that shows the parties clearly understood the first term of the lease to be five-years.

Since the apparent six-year term is best labeled as a drafting mistake, the ambiguity in the lease is resolved by interpreting the initial term to be five years as based on extrinsic evidence.  In re Verderber, 173 Vt. 612, 616 (2002) (affirming Labor Relation Board's interpretation based on its extrinsic evidence findings).  The question that follows then is whether tenant had an automatic and unilateral right to renew the lease for the three additional terms and if so how would tenant signal his renewal.  According to the payment terms of the lease, there is no express requirement for tenant to signal his renewal in a particular manner.  It does, however, make clear that each successive term will be at a higher rate of rent.  Tenant argues that the additional terms of the lease were an extension not a renewal of the lease, and that the subtenant's continued presence on the property adequately signaled tenant's intent to exercise his option to extend the lease to another term.

What tenant does not explain is why neither tenant nor subtenant began paying out the higher level required under the lease for each consecutive five-year term.  Tenant's argument that merely holding-over is notice enough to landlord is based on his interpretation of L. Colodny v.

Amer. Clothing Co., 107 Vt. 321, 325 (1935). Ignoring for the moment that this case is primarily about the irrelevance of parol evidence to affect a lease made under seal, it involved an actual exchange of notice of tenant's intent to renew the option and landlord's refusal to accept. Id. at 323. The question in L. Colodny was whether tenant lost his right to renew when the parties made a subsequent oral modification to the lease to include heat. That would be closer to landlord here arguing that the addendum parties executed following the lease excused him from accepting tenant's options to renew. In no case that we have found in Vermont has the tenant's mere holding-over been enough to give landlord notice of renewal. This is especially true when tenant has not complied with the sole express term for the additional lease terms, namely paying increased rent.

Since tenant failed to pay the increased rent required of subsequent terms and failed to give notice of renewal at the end of the five-year term, his subtenant's continued presence cannot be viewed as anything but a hold-over tenancy. With an express lease, when specific renewal terms are not satisfied and when notice is not given, the renewal options are waived. Cf. L'Esperance v. Town of Charlotte, 167 Vt. 162 (1997) (holding that town could not waive renewal option in lease where tenant notified it of his intent to exercise the option). As a hold-over, tenant no longer had a right of possession under the lease. Any right to possession that tenant obtained through his subtenant must be determined through equity.

Therefore, we conclude that there is no ambiguity in the lease between landlord and tenant and that the term of the lease ran for five years with three options to renew for five more years. Since tenant gave no notice and did not comply with the terms of the lease, his attempt to renew in December 2002 was ineffective.

Parties will brief further on what parties relationship was as of the end of the first term on December 31, 2001.

Dated at Burlington, Vermont_____, 20_____.


_____
Judge