## Robert Hill, Richard Trombley, Alfred Beaudoin, Jerry Bushell v. City of Burlington

[597 A.2d 792]

No. 89-384

Present: **Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 9, 1991

*Geoffrey W. Crawford* of *O'Neill and Crawford*, Burlington, *Mitchell L. Pearl* of *Langrock Sperry Parker & Wool*, Middlebury, and *Stephen A. Unsworth* of *Hill & Unsworth*, Essex Junction, for Plaintiffs-Appellants.

*Joseph E. McNeil* and *William F. Ellis* of *McNeil & Murray*, Burlington, for Defendant-Appellee.

**Johnson, J.** Plaintiffs appeal a ruling by the superior court that they are not entitled to be compensated for disability leave[1] benefits accumulated before they were mandatorily retired for disability by their employer, the City of Burlington. They claim that the superior court misinterpreted their employment contract with the City and, in so doing, unconstitutionally deprived them of vested property rights. We affirm.

Plaintiffs worked for the Burlington Fire Department in non-union, supervisory positions. Each became disabled after many years of service. Each remained employed and received disability benefits for at least a year before being notified of his mandatory retirement. At retirement, each of the plaintiffs had accumulated thousands of hours of disability leave for which he was not compensated. Benefits for disability leave were equal to

---

[1] The parties have used sick leave and disability leave interchangeably. In the interests of clarity, we use disability leave throughout the opinion.

full pay, whereas benefits under the retirement system were less.

The contract is comprised of the Burlington City Code (Code) and the City of Burlington Personnel Policy (Policy). No express language exists requiring compensation for accumulated disability leave to a disabled employee who is being mandatorily retired. Plaintiffs derive their claim from the general sections on disability leave and from isolated references to unused disability leave that appear in other sections of the contract.

The scheme for disability leave is set forth in Article III of the Code (Disability Leave) and in sections 6 (Leave) and 11 (Employee Benefits) of the Policy. Together they permit an employee who has suffered a disability attributable to employment to receive disability benefits for not more than twelve months. Code, Art. III, § 24-79(a); Policy § 6G. Disability leave for accident or illness not attributable to employment is accrued according to length of service and "shall be accumulated." Code, Art. III, § 24-79(b)(4); see Policy § 6F(2) (sick leave "may be accrued in an unlimited amount").

Plaintiffs rely on Policy § 11B(4), which provides that employees may use accumulated disability leave based on length of service at the expiration of a twelve-month work-related disability leave. The issue here is whether Policy § 11B(4) applies when the City has exercised its right, as it has done in the case of the plaintiffs, to mandatorily retire an employee who is "suffering from a total and permanent disability." Code, Art. II (Retirement), § 24-23(a). An employee so retired is entitled to disability retirement benefits until attaining normal retirement age, when regular retirement benefits become payable. *Id.*

Section 24-77 of Code Article III on Disability Leave, entitled "Regulations not to modify rights under retirement system," provides:

> Nothing in this article shall be deemed to modify or restrict any of the rights of the city or of the employee as such may be set forth in the city retirement system regulations, nor shall any disability leave or disability benefit payment be continued beyond an employee's date of retirement for age or disability.

On its face, this section sets forth an unqualified rule that, upon retirement, disability leave and disability benefits cease.

Plaintiffs argue that this interpretation renders meaningless their contractual rights to accumulate and use disability leave based on length of service. They would have us interpret § 24-77 narrowly, as merely prohibiting payment of sick leave and disability retirement benefits at the same time. They argue that other references in the contract indicate an intent to compensate employees for accumulated disability leave in the event of mandatory retirement for disability.

■ We address each of these arguments in turn. First, plaintiffs' right to accumulate and use disability leave is not rendered meaningless by reading § 24-77 to terminate those rights when an employee becomes totally and permanently disabled. The City cannot exercise its right to terminate an employee for disability absent a determination by the city board of medical examiners that the employee is suffering from a total and permanent disability. Code, Art. II, § 24-23. Whether a disability is total and permanent does not depend on the length of time an employee has been sick, but rather on whether the employee "is able for the foreseeable future to perform the employment duties he was assigned at the time [h]e became so disabled." Code, Art. II, § 24-23(b). For example, an employee with a nonpermanent work-related disability lasting thirteen months could use his one-year disability leave under § 6G and a month of accumulated disability leave under § 6F. Thus, an employee can use accumulated disability leave as long as he will be able to resume his employment duties in the foreseeable future.

■ Second, it is true that § 24-77 prohibits double benefits, but read in conjunction with § 24-23(a),[2] the section also expressly allows the City to change the status of a totally and permanently disabled employee to one of retiree, notwithstanding the disability leave policy set forth in § 24-79. Therefore, an employee's right to accumulated disability leave is available only as long as an individual remains employed.

---

[2] Section 24-23(a) provides, in pertinent part, "a member who has not yet attained the normal retirement age for his class, has been examined by the board of medical examiners and has been determined to be suffering from a total and permanent disability may be retired by the retirement board on a disability retirement benefit."

■ Third, isolated references to unused disability leave in other parts of the contract do not, standing alone, support plaintiffs' position. The references appear as exclusions to the computation of disability retirement benefits, earned compensation, and length of service.[3] Plaintiffs argue that these references would not have been made unless payment was contemplated. It is unclear why these references exist; perhaps they related to a somewhat different benefit scheme under negotiation and were inadvertently retained; perhaps they were inserted in the event that a system of lump sum payments was subsequently adopted.[4] Whatever the explanation, it is only by implication that they could be said to create the rights plaintiffs claim. We hold that a vague implication of rights cannot prevail over the clear and express provisions of § 24-23(a) and § 24-77. See 3 A. Corbin, Corbin on Contracts § 564, at 298 (1960) ("An implication that would otherwise be reasonable should not be made when the contrary is indicated in clear and express words.").

---

[3] Section 24-23(a) states:

> The disability retirement benefit shall equal seventy-five (75) per cent of the member's earned compensation at the time of the disability retirement. Such amount shall be reduced by any periodic worker's compensation benefit payments, *any other city disability leave payments* and, in the case of a Class B member, any primary social security benefit payments to the member.

(Emphasis added.)

The definitional provision, § 24-14, includes the following two definitions:

> *Earned compensation* shall mean the full rate of normal compensation paid to an employee for working the full normal time for his position. Normal compensation shall not include extra payments for working on holidays, overtime work, shift differentials, longevity pay, *payments for unused disability leave* or bonuses. In cases where normal compensation includes shelter and/or board, the retirement board shall determine the value of that part of the normal compensation not paid in money.
>
> . . . .
>
> *Service* shall mean service as an employee for which compensation is paid by the city, including the period covered by . . . a payment for accumulated vacation leave but not including a period covered by a *payment for unused disability leave.*

(Emphasis added.)

[4] Two of the disputed references were inserted in 1984. In 1986, the City did adopt a provision allowing for payment of accumulated disability leave in a lump sum prior to retirement.

■ Finally, the Policy explicitly provides that, within certain carefully drawn limitations, employees shall receive compensation for unused vacation leave upon termination. The disability leave sections, which are contiguous, contain no similar language. Because of the omission, we conclude that compensation for sick leave at termination was not contemplated. See *Grenafege v. Department of Employment Security*, 134 Vt. 288, 290, 357 A.2d 118, 120 (1976) (applying the precept of *expressio unius est exclusio alterius*).

Plaintiffs rely heavily on a California case in which a court implied a similar result to that they urge here. In *Throne v. City of Palos Verdes Estates*, 120 Cal. App. 3d 141, 143, 174 Cal. Rptr. 332, 332–33 (1981), the California Court of Appeal interpreted a city resolution stating that "[n]o payment shall be made for accumulated sick leave at the time of termination or retirement from employment." It held that the provision did not preclude payment of accumulated sick leave to employees who were sick at retirement, reasoning that the provision was directed only at healthy, retiring employees. We disagree with the *Throne* holding, which circumvents clear language. In any event § 24-77 of the Burlington Code states unambiguously that disability leave is cut off not only by regular retirement but also by disability retirement and therefore clearly applies to disabled employees as well as to healthy ones.

Other cases cited by plaintiffs are dependent on language or a course of conduct not at issue in the case at bar, which must be decided on the basis of the contract before us. See *Marsille v. City of Santa Ana*, 64 Cal. App. 3d 764, 768, 134 Cal. Rptr. 743, 745 (1976) (state statute provided that retirement of government employees would not become effective prior to expiration of accumulated sick leave); *Board of Fire Comm'rs of City of Baltimore v. Potter*, 268 Md. 285, 287–90, 300 A.2d 680, 681–83 (1973) (Baltimore City Code contained no language permitting disability retirement prior to use of sick leave benefits and city had long standing policy of paying disabled employees full salary for one year prior to retiring them); *Vangilder v. City of Jackson*, 492 S.W.2d 15, 17–18 (Mo. Ct. App. 1973) (city ordinance contained no language limiting an employee's right to disability leave upon retirement); *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 901, 320 N.W.2d

910, 915 (1982) (state's inclusion of lump sum payments for unused disability leave in figure used to determine pension payments for a period of ten years created legitimate expectations on the part of plaintiffs that lump sum payments would be included in figure); *Cannon v. City of Moses Lake*, 35 Wash. App. 120, 122, 663 P.2d 865, 866 (relevant city resolution contained no language limiting an employee's right to accumulated sick leave upon retirement due to disability), *review denied*, 100 Wash. 2d 1010 (1983).

██ We are obligated to enforce the contract as written. See *Roy's Orthopedic, Inc. v. Lavigne*, 145 Vt. 324, 326, 487 A.2d 173, 175 (1985). Every part of the contract must be considered, so that the parts form a harmonious whole, *In re Vermont State Employees' Ass'n*, 139 Vt. 63, 65, 421 A.2d 1311, 1312 (1980), but we cannot "read terms into a contract, unless they arise by necessary implication." *In re Stacey*, 138 Vt. 68, 71, 411 A.2d 1359, 1361 (1980). Plaintiffs would have us read into the contract a significant term that does not arise by necessary implication, and which would deprive the City of an unambiguous provision inserted in the contract for its benefit. See *Lavigne*, 145 Vt. at 326, 487 A.2d at 175.

It is not necessary to reach plaintiffs' claim of an unconstitutional deprivation of property rights; our holding is that they do not possess the property rights they assert.

*Affirmed.*