# Dennis Morrisseau v. Frederick Fayette, Jr., et al.

[670 A.2d 820]

No. 94-506

Present: Allen, C.J., Dooley, Morse and Johnson, JJ., and Cheever, Supr. J.,
Specially Assigned

Opinion Filed November 9, 1995

*Samuel H. Press* of *Portnow, Little & Cicchetti, P.C.*, Burlington, for Plaintiff-Appellant.

*John J. Collins* and *Michael J. Harris* of *Sutherland & Collins, Inc.*, Burlington, for Defendants-Appellees.

**Dooley, J.** Plaintiff Dennis Morrisseau appeals the Chittenden County Superior Court's grant of summary judgment to defendants, Philip Fayette and the heirs to the estate of Frederick J. Fayette, in an action for specific performance of a purchase agreement for the sale of Juniper Island, an island in Lake Champlain. Plaintiff argues (1) that the trial court improperly reversed previous rulings of law by another judge in the same action, (2) that performance of a contract for sale of real estate was stayed by defendants' appeal of a probate court order approving that sale, and (3) that the liquidated damages clause of the purchase agreement does not limit defendants' liability solely to the return of plaintiff's deposit. We affirm.

## I.

At least by anecdotal reputation, this is the latest episode (and we hope the last), in the longest running litigation in Vermont. The matter began with the 1974 death intestate of Frederick Fayette, Sr. while he owned Juniper Island. After opening the estate, the probate court appointed commissioners, pursuant to the procedure then in effect, to assign to the widow the "third in value of the real estate" to which she was entitled by statute. See 14 V.S.A. § 466. Apparently, the commissioners reported that they could not set out the widow's share of the many properties involved and they obtained from the probate court a license to sell all of the real estate to pay the widow's share. See 14 V.S.A. § 469. Title to some of these properties, including Juniper Island, was disputed by Philip Fayette; for example, he claimed to own 50% of the Island. The commissioners were specifically authorized to sell the properties involved in the disputed

claims, subject to the claims. Pursuant to the authority of the license, the commissioners entered into a contract with plaintiff, allowing him to purchase Juniper Island if the estate perfected title to it by June, 1984, some four years after the purchase agreement was signed. Plaintiff put up $10,000 to insure performance, to be refunded if the estate could not clear up the title.

The heirs objected to certain actions of the commissioners, including the sale of Juniper Island. After hearing, the probate court decided with respect to Juniper Island that the applicable statute did not authorize the commissioners "to enter into such a long-time, option type, contingent contract for the sale of the subject land." The court ordered the return of plaintiff's deposit and that all other rights under the purchase and sale contract were "extinguished."

The commissioners, who still held a license to sell Juniper Island, renegotiated the contract with plaintiff to eliminate the estate's obligation to clear title and to provide for the payment of the $100,000 purchase price in three installments, the first two of $2,500 and the third of $95,000. The contract states that it is "subject to the approval of the Chittenden District Probate Court" and that it would "become effective and binding for all purposes as soon as a court order approving it is issued by the probate court." Closing was to take place "one hundred eighty (180) days — or such lesser period as Buyer may elect on ten (10) days notice to sellers — after Probate Court approval of this agreement." The probate court approved this agreement, including the following language in the findings:

> Purchase Agreement is to become effective and binding for all purposes as soon as a Court Order, approving it, is issued by the Probate Court. It is the expressed intent of both parties that the times specified for performance shall commence from date of Probate Court approval of the Purchase Agreement, notwithstanding appeal by any other party to this contract of sale.

Defendants appealed the approval order to the superior court on April 17, 1980.

A second installment of $2,500 was due under the contract in July 1980. Plaintiff unsuccessfully sought a stay of his obligations under the contract, pending the appeal, from the Chittenden Superior Court. He failed to pay the second installment, prompting the commissioners to terminate the contract in a letter to plaintiff, which provided:

> You . . . became obligated to pay the sum of $2,500.00 on July 10, 1980.
>
> We are aware that you requested a stay of the above-mentioned order of the probate court pending appeal . . . . [I]t is our position that such request does not relieve you of any of your obligations under the contract.
>
> Since you failed to make the payment specified in the contract and have ignored our offer to extend the time of payment for six (6) months in return for an increase of the additional deposit from $2,500.00 to $5,000.00, we regard the contract as terminated and hereby give you formal notice to that effect.

On July 22, 1985, the Chittenden County Probate Court entered a decree of settlement and distribution regarding the Fayette Estate. Juniper Island was granted to defendants, each of whom received an undivided one-eleventh interest in the property. In August 1985, upon learning that title to Juniper Island had been settled, plaintiff tendered to defendants the second $2,500 payment required by the contract. Defendants returned plaintiff's check and refused to perform. Plaintiff then brought suit for specific performance of the purchase agreement on September 6, 1985.

On October 19, 1987 the superior court dismissed plaintiff's action for specific performance of the purchase agreement, finding that plaintiff had failed to timely serve three of the eleven defendant heirs under V.R.C.P. 3, and had not requested an enlargement of time in which to serve them under V.R.C.P. 6(b). The trial court also found that paragraph 9 of the purchase agreement restricted plaintiff's remedy to the return of his deposit. Plaintiff appealed, and we affirmed based on the trial court's procedural decision, without reaching the remedy issue. *Morrisseau v. Estate of Fayette*, 155 Vt. 371, 371, 584 A.2d 1119, 1119 (1990).

In December of 1990, plaintiff commenced this action, known colloquially as *Juniper IV*, seeking specific performance and damages for defendants' alleged breach of contract. On March 4, 1991, defendants' motion to dismiss and for sanctions was denied. Plaintiff's motion for summary judgment was denied on September 3, 1991.

Approximately six months into the litigation, Judge Frank Mahady, who had presided over the early stages of the litigation, rotated out of the Chittenden Superior Court and the case was assigned to Judge Matthew Katz. On September 6, 1994, Judge Katz granted defend-

ants' motion for summary judgment. In his order, Judge Katz found that plaintiff breached the contract and, as a result, was not entitled to the remedy. He held that, notwithstanding the stay of enforcement of the probate court order approving the sale occasioned by defendants' appeal, the plain language of the contract required plaintiff to tender the second $2,500 payment on July 10, 1980, and he failed to do so. Judge Katz also found that paragraph 9 was a valid liquidated damages clause and restricted plaintiff's remedy to return of his deposit.

## II.

Plaintiff first argues that Judge Katz erred by reversing Judge Mahady's previous rulings of law in this action in the absence of new evidence or other grounds for such reversal. Specifically, plaintiff argues that, by granting defendants' motion for summary judgment after a similar motion by plaintiff had been previously denied, Judge Katz allowed defendants an impermissible "horizontal appeal" and modified the law of the case.

The issue relates to both grounds for the decision granting summary judgment. The first ground, that plaintiff failed to tender the second installment of the price and, thus, breached the purchase and sale contract, was resolved at least indirectly in Judge Mahady's ruling that *Juniper IV* was not barred by the statute of limitations. Judge Mahady ruled that plaintiff did not have to tender further payments once defendants appealed the probate court approval of the contract. On the second issue, whether plaintiff's remedy was restricted to return of the deposit, Judge Mahady ruled that further factual development was necessary, but Judge Katz ruled the remedy was so restricted without this factual development.

Plaintiff labels defendants' second motion for summary judgment, on which Judge Katz ruled, as a "horizontal appeal" from one superior judge to another,[1] prohibited by our opinion in *Economou v. Economou*, 133 Vt. 418, 421-22, 340 A.2d 86, 88 (1975). In *Economou*, we reversed a judgment on the pleadings for two reasons, one of which was that the decision represented a horizontal appeal from the denial of a motion for summary judgment by another judge. We explained why such a horizontal appeal was undesirable:

---

[1] We accept for purposes of analysis that the decisions of Judge Katz were contrary to those of Judge Mahady and were not based on new evidence. We note, however, that there was extensive discovery between the two rulings and the second motion for summary judgment relied upon facts developed in that discovery.

[t]o allow a subsequent irreconcilable ruling to stand would encourage litigants in superior courts to delay proceedings already initiated while awaiting the future assignment of a presiding judge they believed more likely to rule in their favor.

*Id.* Plaintiff argues that *Economou* applies equally to the grant of summary judgment after the denial of summary judgment by another judge.

Where only one judge is involved, we have upheld a decision granting summary judgment following an earlier decision which denied the motion. See *Kelly v. Town of Barnard*, 155 Vt. 296, 307, 583 A.2d 614, 620 (1990); *Morrisville Lumber Co. v. Okcuoglu*, 148 Vt. 180, 182, 531 A.2d 887, 888 (1987). In *Kelly*, we explained the rationale for allowing a court to grant a second motion for summary judgment, even in the absence of new facts:

> "[u]ntil final decree the court always retains jurisdiction to modify or rescind a prior interlocutory order. Although the court might properly refuse to reconsider a second motion, we will not require a judge to perpetuate error or take a more roundabout way to arrive at an ultimately necessary judgment by refusing him the right to entertain a second motion for summary judgment after he has ruled once the other way."

155 Vt. at 307, 583 A.2d at 620 (quoting *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1121 (10th Cir. 1979)). We believe this rationale applies whether or not a second judge ultimately grants the motion for summary judgment.

The necessary consequence of plaintiff's position is that even if both this Court and the trial court agree that summary judgment is appropriate, a trial must be held to avoid a horizontal appeal. As the United States Supreme Court has pointed out, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The central purpose of summary judgment is "to avoid a useless trial." *Sykas v. Kearns*, 135 Vt. 610, 612, 383 A.2d 621, 623 (1978). Although the policy considerations outlined in *Economou* are valid, we have not given them overriding effect in other contexts. Indeed, in criminal cases, we require defendants to seek a "horizontal

appeal" of pretrial rulings made by a different judge so that the trial judge is not put in error by another judge's ruling. See *State v. Gonyaw*, 146 Vt. 559, 562, 507 A.2d 944, 947 (1985) (explaining rule announced in *State v. Senecal*, 145 Vt. 554, 558, 497 A.2d 349, 351 (1985)). Whichever posture we adopt on horizontal appeals, the reality is that there are likely to be few because "[r]outinely, the trial judge refuses to consider refiled motions because of lack of time and discomfort with the role of reversing the decision of a colleague." *State v. Bruno*, 157 Vt. 6, 13, 595 A.2d 272, 276 (1991) (Dooley, J., concurring). Although we condemn judge shopping, and dilatory tactics adopted as part of that practice, we do not believe that the risk described in *Economou* is so great that we should reverse a proper grant of summary judgment to avoid this practice.

█ We overrule *Economou*'s holding that a second judge may not grant a motion for summary judgment or judgment on the pleadings after denial of a similar motion by another judge. In cases like this, rigid application of the *Economou* rule would defeat the purpose of summary judgment and mire our trial courts in "useless" trials.

Plaintiff's position fares no better when grounded in the law of the case doctrine. The doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988). The doctrine is a "rule of practice" from which the court may depart "in a proper case." *State v. Cain*, 126 Vt. 463, 469-70, 236 A.2d 501, 505 (1967). Thus, where a court ruled on an issue of law in the course of denying summary judgment, it "retained the power to 'reopen what ha[d] been decided.'" *Converse v. Town of Charleston*, 158 Vt. 166, 169, 605 A.2d 535, 537 (1992) (quoting *Perkins v. Vermont Hydro-Electric Corp.*, 106 Vt. 367, 415, 177 A. 631, 653 (1934)).

For the reasons stated with respect to the horizontal appeal argument, we are unwilling to apply a useful rule of practice in a way that prevents efficient adjudication. A decision denying summary judgment is an inappropriate foundation on which to build immutably the law applicable to on-going litigation before the court.

### III.

We next address plaintiff's argument that defendants' appeal of the probate court order stayed performance of the terms of the contract, such that plaintiff was not required to perform until 1985, when the

appeal terminated and title to Juniper Island was settled. Plaintiff relies on the automatic stay provided by our procedural rules. V.R.C.P. 72(b) provides: "[P]ending the appeal if a notice is filed, the decree of the probate court shall be stayed as provided in Rule 62 of the Rules of Probate Procedure." Probate Rule 62(c) provides that "the taking of an appeal from a judgment shall operate as a stay of enforcement of the judgment during the pendency of the appeal . . . ." A "judgment" is defined by the probate rules to mean "a decree and any order from which an appeal lies." V.R.P.P. 54(a). Plaintiff argues that the automatic stay of the probate court approval of the purchase and sales contract tolled his obligation to perform under that agreement.

At the outset, we must distinguish between the obligations created by the purchase and sales agreement and the action of the probate court. Our stay rule affects the latter if it involves a judgment, V.R.P.P. 62(c), but not necessarily the former. An example of the distinction is provided by *Roy's Orthopedic, Inc. v. Lavigne*, 145 Vt. 324, 487 A.2d 173 (1985), where defendant violated a covenant not to compete with plaintiff for a period of three years following the termination of his employment. Although plaintiff obtained an injunction to enforce the agreement in the superior court, the injunction was stayed during appeal and the three-year period expired during the litigation. Recognizing that the result was "harsh," we held that the stay suspended the implementation of plaintiff's remedy but not the running of the three-year-period of the covenant, *id.* at 327-28, 487 A.2d at 175-76, even though plaintiff was left with no remedy. We emphasized that "the possible consequences of the delays inherent in litigation based on a breach of the noncompetition clause might have been provided for [in the contract]." *Id.* at 328, 487 A.2d at 176.

■ Plaintiff argues, however, that the stay indirectly suspended his contractual obligations because the contract was made contingent on the approval of the probate court, and this approval was stayed by the appeal. For two reasons, we disagree with this argument.

First, plaintiff's position is inconsistent with the language of the contract, especially in the context of the earlier action by the probate court. The contract provided that it would "become effective and binding for all purposes as soon as a court order approving it is issued by the probate court." Nowhere does it add that performance under the contract would be tolled if the probate court approval were appealed. The probate court addressed this exact point, stating in its order that it was "the expressed intent of both parties that the times

specified for performance shall commence from date of Probate Court approval . . ., notwithstanding appeal . . . ."[2] This contemporaneous understanding of the agreement is reinforced by a letter from plaintiff to the attorney for the commissioners stating that he understood that he could close on the property despite the appeal.

The obligation to close the sale is further reinforced by the surrounding circumstances. In 1978, one of the Fayette sons brought an action against the estate claiming he held title to Juniper Island, among other properties, by a deed from his father. Because of this litigation, the original contract between plaintiff and the commissioners was made contingent on the estate perfecting title to Juniper Island. It was this provision that caused the probate court to reject the first contract because it was a "long-time, option type, contingent contract" which the court found inconsistent with the statutory requirement that the property be sold to provide the widow's interest. See 14 V.S.A. §§ 466, 469. If the terms of the second contract allowed the sale to be suspended pending the appeal to superior court, the same court in which the son's title action was pending, the second contract became indistinguishable from the first one in delaying the realization of the widow's interest until after the title to Juniper Island was cleared. The second contract, and the probate court approval of it, makes sense only if the sale was to go forward despite the appeal.

Unless it is ambiguous, the construction of a contract is for the court as a matter of law. See *Ianelli v. Standish*, 156 Vt. 386, 389, 592 A.2d 901, 903 (1991). The question of whether a contract is ambiguous is also a question of law. See *In re New England Telephone & Telegraph Co.*, 159 Vt. 459, 466, 621 A.2d 232, 237 (1993). In determining whether a contract is ambiguous, the court may consider evidence of the circumstances surrounding the making of the contract. See *Breslauer v. Fayston School Dist.*, 163 Vt. 416, 425, 659 A.2d 1129, 1135 (1995). To determine the meaning of a contract, we consider all parts so they "form a harmonious whole," but do not read

---

[2] Plaintiff argues that we should ignore the probate court language because it applies only to an appeal "by any other party to this contract of this contract for sale" and defendants, who filed the appeal, were not parties to the contract. This language is clearly in error because there were no other parties to the purchase and sales contract and it was understood that any appeal would come from defendants. Also there was nothing in the language of the contract that could be interpreted as suspending performance because of an appeal by specific persons, but not suspending performance if the appeal were filed by a different person. The court's statement about the effect of an appeal must apply whoever filed the appeal.

terms into the contract unless they arise by necessary implication. *Hill v. City of Burlington,* 157 Vt. 241, 247, 597 A.2d 792, 795-96 (1991).

In granting summary judgment, the trial court concluded that the parties intended that the obligations under the contract would commence when the probate court approved the contract and would not be tolled by a subsequent appeal. Especially in light of the surrounding circumstances, we affirm this construction of the contract as the most consistent with the unambiguous language and our obligation not to read additional terms into the contract.

There is a second reason why we believe the trial court's conclusion was correct. The controlling rule, V.R.P.P. 62(c), provides a stay only with respect to a "judgment," defined in the rules as a decree or order from which an appeal lies. See V.R.P.P. 54(a). We do not believe that the probate court approval order was a judgment within the meaning of Rule 54(a).

In order to be appealable, a probate court order must be "final as to the subject matter before the court." *In re Estate of Seward,* 139 Vt. 623, 624, 433 A.2d 274, 274 (1981). An order is final if it "disposed of all matters that should or could properly be settled at the time and in the proceeding then before the court." *In re Estate of Webster,* 117 Vt. 550, 552, 96 A.2d 816, 817 (1953). It is not final if "something remained to be done before the subject matter therein involved was finally disposed of and that further proceedings must be had before a final disposition." *Id.*

■ ■ The court's order that the real property of Frederick Fayette, Sr. be sold to provide the widow's statutory share, and the license to the commissioners to effectuate that sale, was conclusive on the question of whether Juniper Island would be sold. The license gave the commissioners full power to make the sale and convey a deed "as if the deed had been executed by the deceased in his lifetime." 14 V.S.A. § 1652. The commissioners had no duty to report to the probate court, or seek its approval, until after the property was sold and title passed. See 14 V.S.A. § 1651(9); V.R.P.P. Forms 39 (license to sell directs licensee to report "after the sale has been completed"), 43 (report on license to sell filed after the sale).

The action of the commissioners in selling property pursuant to a license issued by the probate court is procedurally similar to their action in setting out homestead and dower. We have held that such action is final, and appealable, only when "it is returned to the court making the appointment, accepted and recorded by that court, and a

certified copy thereof recorded in the town clerk's office where deeds of such lands are by law required to be recorded." *Brown v. Brown,* 66 Vt. 76, 79-80, 28 A. 666, 667 (1894).

The order approving the contract of sale was an intermediate step and did not finally dispose of Juniper Island. There is nothing in our statutes that either requires or prohibits this intermediate step. Its effect was to give the commissioners an advance ruling on a question that would no doubt arise when they sought approval for their post-sale report. See *In re Wellman Estate,* 119 Vt. 426, 435-36, 127 A.2d 279, 285 (1956). Their power to sell Juniper Island was not contingent on advance approval of the probate court.

■ We do not believe that the optional approval of the contract of sale was in any sense a final order. Since it was not final, it was not appealable, and therefore it was not a judgment. The attempted appeal of this order did not act as a stay.

■ Plaintiff was not excused from his obligation to pay the second $2,500 installment of the purchase price because of defendants' appeal of the probate court approval. The undertakings of the parties under the purchase and sales contract were concurrent and dependent so that plaintiff's breach prevents him from obtaining specific performance or damages for breach of contract. See *Ackerman v. Carpenter,* 113 Vt. 77, 82, 29 A.2d 922, 925 (1943).

Because of our disposition of this issue, we do not reach the third issue raised by plaintiff.

*Affirmed.*