Main Street Landing v. Lake Street Associates, No. 494-04 Cncv (Katz, J., Sept. 7, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                          Docket No. 494-04 CnCv

MAIN STREET LANDING LLC

v.

LAKE STREET ASSOCIATES, INC.

FINDINGS OF FACT
CONCLUSIONS OF LAW AND
NOTICE OF DECISION

The parties have found themselves in a dispute regarding plaintiff developer's right to terminate a parking easement which defendant property owner has enjoyed for some years and substitute another form of parking.

FINDINGS OF FACT

1.      Plaintiff Main Street Landing is the successor in title to Alden Development, both companies having been active in the development of a substantial parcel of waterfront land in Burlington.

2.      Late in 1985, Alden conveyed to defendant's predecessor in title the property known as the McKenzie Building.  That conveyance constituted a subdivision from Alden's far greater parcel.  Because it was a subdivision, it required substantial oversight by the City.  The McKenzie parcel that resulted included the actual building and only a minimal amount of land surrounding it.  No parking for tenants or their clients would have been possible with the bare land and structure conveyed.  Being a building in an urban setting, it would be useless without parking.

3.      The parties met this parking issue by including the following parking provision in the deed to defendant's predecessor:

> There is included in this conveyance the license and right to use the number of parking spaces required by the City of Burlington Planning Commission in connection with the granting of Certificate of Appropriateness #85-524 but not to exceed 65 spaces under any circumstances, which right shall be appurtenant to the above described Premises, without cost to Grantee [now defendant Lake Street] unless or until the provisions set forth in subparagraph 2 occur, and shall be subject to the following rights

which are reserved to the Grantor [now plaintiff Main Street]:

> 1. Grantor shall have the right to designate the location of alternative parking spaces to those initially designated in this deed at any point without 300 feet of any boundary of the Premises;

> 2. Grantor shall have the right to require Grantee to relinquish the parking spaces provided pursuant to this paragraph when a multi-story parking structure is constructed by Grantor or its successors for occupants of the waterfront area and/or the public in connection with the general development of the waterfront area, at which time the Grantee shall have the option to rent the same number of parking spaces as are provided under this paragraph in the parking structure described herein at the then-prevailing rental rate.

Now, plaintiff has given defendant notice that it has constructed such a multi-story parking structure, so plaintiff is demanding defendant relinquish the pre-existing parking arrangements. Simply put, plaintiff Main Street considers the pre-existing 65-space easement or license at an end and has given notice that defendant Lake Street may no longer expect to park tenant or client vehicles on Main Street property.

4.       The original Purchase and Sale Agreement between these parties' predecessors contained some different language regarding parking rights for the McKenzie Building. In pertinent part, its provisions were as follows:

> Parking. . . . Seller shall provide sixty-five parking spaces to meet all the zoning requirements of the City of Burlington in the approximate locations as shown on Exhibit "B" attached hereto unless a lesser amount is granted under permits and then the

> lesser number of spaces shall be provided by Seller . . . . Seller shall have the right to relocate the parking spaces to within three hundred (300) feet of the Premises. Purchase shall notify Seller as soon as possible of the accurate number of parking spaces required for Purchaser's Project, including any reductions permitted by the state and the City of Burlington during the permit process. All such parking spaces shall be provided without charge until such time as parking facilities are constructed in connection with the general development of the waterfront area by Seller *within 300' of the Premises*. At such time as such parking facilities become available, Purchaser shall relinquish the spaces provided pursuant to this paragraph and shall rent the number of spaces needed for the Premises in the parking facility at the then prevailing rental rate, *consistent with the City of Burlington zoning regulations. All obligations of the Seller set forth herein including all future agreements with the City of Burlington to reserve such parking for the benefit of the Premises shall be set forth in the deed of conveyance and shall run with the land conveyed therein.*

The italicized language was added some months after the original purchase and sale agreement was executed. It was added during the period the parties were going through the process of obtaining subdivision approval for their transaction, and only three days before "final staff approval." The inference is clear that this language was added in order to facilitate such approval.

5.      Burlington City officials reviewed the purchase and sale contracts "to make sure the transaction flowed with the zoning permit." (B. Mossman testimony.)

6.      Burlington's Zoning Ordinance at the time required, for parking:

> *Location:* If the required off-street parking space cannot

reasonably be provided on the same lot as the building it serves, such space may be provided on other property located not more than four hundred (400) feet distant, as measured along the nearest pedestrian route.

EX Q.

7.     At the time of the 1985 conveyance between these parties' predecessors in title, Alden Waterfront Corporation, predecessor of Main Street Landing, had detailed, proposed site plans including a large "parking structure" immediately adjacent to the McKenzie Building.  EX 11.

8.     Suitable parking was important to the McKenzie Building for two distinct, although not unrelated reasons—the commercial need to provide it to prospective tenants and their clients, and the need to satisfy City development regulators.

9.     Defendant's predecessor, original recipient of the McKenzie Building conveyance, is Barry Mossman.  He is, and was then, an experienced real estate developer.  The dual considerations of satisfying the marketplace demands of prospective tenants and the regulatory demands of the City for parking were not lost on him.
      Having the McKenzie building succeed as a commercial venture was also important to plaintiff's predecessor—Alden.  Its principal Paul Flinn did not want an empty building in the middle of his project.  (J.Knapp testimony.)

10.     The garage constructed by Main Street Landing, known as the Cornerstone, has about 100 spaces, 50 available to the general public, the balance rented monthly by permit.  It is located 1,200+ feet from the

McKenzie Building.

CONCLUSIONS OF LAW

1.      Deeds are to be interpreted according to their plain language. Morrisseau v. Fayette, 164 Vt. 358, 366 (1995).  Nevertheless, should that language prove ambiguous, because it could support two or more readings on the point in question, it is the duty of the court to resolve the legal question of proper interpretation, so as to ascertain the intent of the parties.  Vermont Nat'l Bank v. Chittenden Trust Co., 143 Vt. 257, 266 (1983) ("It is hornbook law that construction of contract terms is a matter of law and not a factual determination.").  In the end, the long-standing purpose of deed construction has always been the effectuation of the actual intent of the parties at the time of the bargain.  Blanchard v. Morey, 56 Vt. 170, 174 (1883).

2.      In consideration of whether an ambiguity exists, the court may read the pertinent language against the context of existing circumstances. Morriseau, 164 Vt. at 366; Isbrandtsen v. North Branch Corp., 150 Vt. 575, 578 (1988) (Plain meaning cannot exist in a vacuum, evidence admitted as to circumstances surrounding the making of agreement).  This view is supported by the Restatement (Second) of Contracts §212 cmt. b (1981), "Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction . . . ."  See also M. Glasser & K. Rowley, On Parol: the Construction and Interpretation of Written Agreements and the Role of Extrinsic Evidence in Contract Litigation, 49 Baylor L. Rev. 657, 665–69 (1997) ("Unlike all other primary rules of construction, this rule affirmatively invites the trial court to consider

extrinsic proof even in the absence of a pleading of, much less a finding of, ambiguity, and even in those cases in which the parties stipulate that the contract is fully integrated.").

3.      One obviously pertinent circumstance would have been the zoning ordinance then governing use of development of this site.  See, e.g., <u>Hollis v. Garwell, Inc.</u>, 974 P.2d 836, 844 (Wash. 1999) (using zoning statutes to give otherwise ambiguous terms plain and definite meaning); see also Restatement (Second) of Contracts § 201 cmt. c (1981) (illustrating that courts can find mutual understanding through an existing statute that the parties were aware of at the time of drafting).  Quite clearly, in this case, the parties were very attuned to the need to conform to zoning.  They amended their purchase and sale agreement at what must have been a critical point of the administrative review process, to make explicit their intent to comply with zoning.  Even the ultimate deed, on which plaintiff rests its case, referred to the "parking spaces required by the City," although perhaps in the strict context of number.  There is no doubt that administrative approval was an issue always staring at the 1985 parties.  The law will always prefer an interpretation which makes for compliance with applicable law.  See Restatement (Second) of Contracts § 203(a); 11 S. Williston & R. Lord, <u>A Treatise on the Law of Contracts</u> § 30:11, at 453 (4th ed. 1999) ("Consonant with the principle that all parts of a contract be given effect where possible, an interpretation which renders a contract lawful is preferred to those which render it unlawful.").

4.      Against this background, we return to the provisions of the conveyance between these parties' predecessors.  Plaintiff Main Street would read the pertinent instrument as providing a duty to provide the 65 spaces, subject to complete defeasance at such time as it builds a parking

garage, with no limitation whatever regarding the location of that garage. Although the garage must be available to occupants of the waterfront area, or the general public, there is actually no limitation regarding its location, argues Main Street. Indeed, it need not even be on the Waterfront.

Defendant Lake Street, by contrast, ties any defeasance of the 65 space parking easement to a garage located so as to satisfy Burlington's zoning ordinance, which requires proximity to its McKenzie Building, in the provision of parking.

Either of these readings is fairly arguable from the mere words employed.

5.      The more persuasive of these alternatives is that the conveyance includes the "parking spaces required" by the City. Although the deed certainly includes the word "number," to so interpret it as mandating sufficient number, while ignoring the required proximity, would make no sense. Why would the grantee ever pay money for a commercial property, knowing that he was likely to face future problems with City administrators over parking too far from his building? Particularly when the issue was clearly flagged by the documents, the only persuasive conclusion is that compliance was intended. Of course, this conclusion is only abetted by the commercial interest of supplying one's tenants with immediately adjacent parking. Contemporary Vermont tenants do not want to have to walk a quarter mile in Vermont winters to get to and from their cars; they don't want to tell their clients that such will be required. At the time these parties negotiated the deed, there was no conflict between number of spaces and their proximity. The developer's predecessor, Alden, had filed detailed plans showing a "parking structure," the very words of the deed, immediately adjacent to McKenzie,

and thereby satisfying the 300 foot requirement.

6.    Plaintiff Main Street also makes much from the language in the purchase and sale agreement and an early draft of the warranty deed. Both of these documents included specific language guaranteeing that the parking facility triggering the end of defendant's parking easement would be within 300 feet of the property.  This "within 300 feet" language was similar to the language that appears in the final deed in the preceding paragraph about alternative parking spaces.  From these documents, Main Street argues that the "within 300 feet" limiting language was purposefully omitted by the parties from the second paragraph and should not be read into it.

Breaking this conclusion down into its parts, we find that it rests upon an inference from the circumstances—namely that what was there in the purchase agreement and the first draft of the deed was purposefully removed from the final deed—and another canon of construction, which states that "the inclusion of certain language in one part of a document indicates that it was intentionally omitted from a related part." Howard Bank v. Lotus-Duvet Co., Inc., 1158 Vt. 393, 396 (1992) (citing Mt. Mansfield Television, Inc. v. Farrell, 126 Vt. 103, 105 (1966)).  Setting aside the problem of looking at prior and contemporary agreements, we have two competing interpretations based on circumstances and canons of construction.  The question is whether we should apply the plaintiff's or defendant's canon.

7.    The answer is somewhat circular.  All the rules of construction have as their single goal ascertaining the intent of the contracting parties. The application of these rules depends "upon the intention of the parties as

it may be discovered from the full text of the contract and the nature of the transaction involved." <u>Mt. Mansfield</u>, 126 Vt. at 105. We conclude for the same reasons stated in the previous paragraphs that the nature of this transaction was to subdivide and develop a viable piece of commercial realty. At the time of the deed, the zoning ordinances in Burlington required parking for such realty to be within 400 feet of the property. Without such parking, this property would have been in violation of the ordinance and subject to losing its zoning permits. Without its permits, the defendant's predecessor in title would have been unable to rent space to commercial tenants, and the property would have been worthless. Beyond permits, though, a future loss of parking would be an investment high-wire act staged by the Three Stooges —you may not guess just when, but you know it's going to fail. We do not believe that it was the parties' intention to put the considerable McKenzie Building investment at such a risk. While plaintiff makes a legalistic, circumstantial case for inferring the restriction out of the deed, we note that exclusion of the important 200 foot limit was not explicit. We, therefore, conclude that defendant's construction is the stronger, as it represents the more likely intention of the parties at the time of the deed.

8.       As something of an afterthought, plaintiff's argument seems inevitably to require the conclusion that its predecessor, Alden, added the 300 foot requirement to satisfy Burlington zoning scrutiny, then deleted it when such scrutiny was past. Such an inference of fraud we will not lightly make.

## NOTICE OF DECISION

The court therefore expects to enter a judgment declaring that plaintiff Main Street Landing may not terminate defendant Lake Street Associates' right to 65 parking spaces, on the strength of spaces being available in the Cornerstone Garage south of Union Station.

Dated at Burlington, Vermont, _____, 2004.


_____
Judge