**Julie A. PEARSON a/k/a
Julie A. Marion**

**v.**

**Gregory J. PEARSON.**

**No. 2009–334–Appeal.**

Supreme Court of Rhode Island.

Jan. 21, 2011.

Sean P. Keough, Esq., Pawtucket, for Plaintiff.

Kevin O. Hagan, Esq., Newport, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

Gregory J. Pearson (Pearson) appeals from a Family Court order requiring him to pay attorney's fees and costs to Julie A. Marion[1] (Marion). Pearson contends that as the prevailing party on Marion's motion to adjudge him in contempt, the trial justice was not permitted to grant this award to Marion. This case came before the

1. Julie A. Marion formerly was known as Julie A. Pearson and now uses the name "Julie Marion Pearson" or "Julie A. Marion." For our convenience delineating between the two parties, this Court shall use "Marion" throughout this opinion.

Supreme Court for oral argument on December 8, 2010, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. Subsequent to our consideration of the parties' submitted memoranda and oral arguments, we are satisfied that cause has not been shown, and we proceed to decide the appeal at this time. For the reasons set forth in this opinion, we affirm the order of the Family Court.

## I

### Facts and Procedural History

On May 18, 2005, Marion and Pearson entered into a "Property Settlement Agreement" (settlement agreement) to allocate their property holdings. The final judgment of divorce was entered on June 15, 2006, and established that the settlement agreement "shall be incorporated by reference * * * but not merged therein and it shall survive same as an independent contract between the parties."

Paragraph 7 of the settlement agreement provided the parties with instructions for satisfying a $100,000 outstanding line of credit with Bank of America.[2] During their marriage, Marion and Pearson jointly obtained the line of credit in their names, individually, and in the name of their business, Maritime Solutions, Inc. The parties agreed that subsequent to their divorce, Pearson would be awarded the business in its entirety, and he would be responsible for the taxes, claims, and debts against the business, including the line of credit. However, the settlement agreement contained a caveat to Pearson's obligations, stating that "[Marion], and her father, Peter Marion, shall go to Bank of

America and make every effort to transfer $50,000 of the outstanding balance on said Line of Credit to [Marion] in order to reduce the outstanding balance on the * * * Line of Credit by the $50,000 figure." Conveying a reciprocal requirement on Pearson, paragraph 7 continued that "[a]rrangements shall also be made to take [Marion's] name off [the line of credit] * * * and the remaining balance shall be the responsibility of [Pearson], and he shall pay said balance and hold [Marion] harmless on same." Paragraph 7 also specified, seemingly predictive of later events, that "[t]hese obligations shall not be discharged in bankruptcy as it is considered a marital obligation with respect to both parties as it pertains to [the line of credit]."

Further anticipating an inevitable bankruptcy, paragraph 27 of the settlement agreement expressly described the rights afforded to Marion or Pearson if either party sought state or federal protection from their personal debts:

"In the event either party files for the protection of the Federal Bankruptcy Act or any state receivership act or any other act for the benefit of debtors, and *any of the joint creditors of the parties shall make demand upon the other party for the payment of obligations which would otherwise have been the responsibility of the other party,* then in such event *the non-bankrupt party shall be entitled to make whatever claims and seek whatever remedies permissible by law and permissible by the terms of this Agreement,* including but not limited to, requiring the bankrupt party to pay such debts on behalf of the non-bankrupt party since the same were assumed by him or her. *Either party may seek*

---

2. Pearson and Marion originally executed the line of credit with Fleet National Bank; however the debt was sold twice, first to Bank of America, and then to Rockstone Capital, LLC (Rockstone).

*to have the bankrupt party meet and pay all costs, including reasonable attorney's fees incurred by the non-bankrupt party in pursuing his or her rights pursuant to remedies under this subparagraph.*" (Emphases added.)

True to the settlement agreement's portents, Pearson filed for Chapter 7 bankruptcy on September 13, 2005. Pearson included both the Bank of America line of credit claim worth $107,000 (at that time) and also Marion's "[h]old harmless obligation regarding Bank of America" as unsecured creditors in his filing. On February 24, 2006, Pearson was discharged from all personal debts.[3]

Thereafter, Pearson and Marion repeatedly found themselves in Family Court bitterly disputing their obligations under the settlement agreement and seeking clarification of the effect of Pearson's bankruptcy on the outstanding line of credit. Specifically, a Family Court order entered on April 28, 2006, reaffirmed that Pearson was required "to make any and all effort to take [Marion's] name off of the line of credit." The order also held Pearson "solely responsible for the line of credit" and prohibited Pearson from "tak[ing] any steps to expose [Marion] to that debt." It concluded that Marion "is hereby protected from that debt, and * * * Pearson does hereby indemnify and hold harmless [Marion] for that debt, and if for some reason a bank or other financial institution should force [Marion] to pay that debt, and she is not indemnified by [Pearson] for said debt, he exposes himself to a Motion to Adjudge in Contempt."

Despite the Family Court's admonition to Pearson, Marion received a letter from Rockstone Capital, LLC (Rockstone) on February 7, 2007, notifying her that the $100,000 line of credit "remain[ed] unpaid

and seriously delinquent." Rockstone further explained that they were preparing to initiate litigation against her. In response, Marion again petitioned the Family Court to intervene and requested that Pearson be adjudged in contempt for willfully violating the order of April 28, 2006. After a hearing, on August 17, 2007, the Family Court again held that "Pearson cannot take any steps to expose [Marion] to that Rockstone * * * debt and [Marion] is hereby protected from that debt and [Pearson] does hereby indemnify and hold harmless [Marion] for that debt, and if for some reason a bank or other financial institution should force [Marion] to pay that debt and she is not indemnified by [Pearson], he exposes himself to a Motion to Adjudge in Contempt." However, Pearson was not adjudged in contempt at that time.

On June 28, 2008, Rockstone followed through on its threat, filing a civil action against Marion in Kent County Superior Court and requesting $138,123.42 in damages, plus accrued interest, costs, expenses, late charges, and attorney's fees. Marion filed a third-party complaint against Pearson demanding indemnification if Rockstone does obtain a judgment against her. On or about September 8, 2008, Pearson answered the third-party complaint raising several affirmative defenses including his bankruptcy. Pearson also counterclaimed against Marion's third-party complaint asserting that because Marion also was a personal guarantor on the line of credit, he is entitled to contribution from her for any amount he is held liable.

On September 26, 2008, Marion again took action in the Family Court, requesting that Pearson be adjudged in contempt of the order of April 28, 2006 and the

---

**3.** Pearson's bankruptcy petition was closed on March 2, 2007.

order of August 17, 2007 because she was being sued by Rockstone for the entire line of credit debt. The matter came before the Family Court on June 5, 2009. Marion, Pearson, and Marion's father, Peter Oliver Marion, testified.

Both Marion and her father explained that after the settlement agreement was finalized they approached Bank of America about transferring $50,000 of the line of credit to her name, but Bank of America declined to divide the debt. Marion testified that she did not further pursue Bank of America on this request after the 2006 and 2007 orders because she understood the Family Court's holdings as requiring Pearson to indemnify her fully if or when she was held liable for the debt. Marion testified that she believed Pearson now was responsible for the full amount of the line of credit. Marion stipulated that Rockstone had not yet obtained a judgment against her for the line of credit.

Pearson testified that he understood that the Family Court's prior orders required that he indemnify Marion for any liability she incurs from that debt, even though he had bankruptcy protection. However, Pearson explained that he had declined to take any present action to pay down the line of credit debt because he planned to indemnify Marion if she was "forced" to pay following final adjudication on the Rockstone civil action. He also explained that he did not have the present ability to pay the debt or indemnify Marion.

In a bench decision, the Family Court justice found Marion's father's testimony credible with respect to "mak[ing] every effort" to transfer $50,000 of the debt into Marion's name.[4] He acknowledged that had Marion been successful with the trans-

fer, Pearson was supposed to make arrangements to remove her name from the line of credit. The Family Court justice also reaffirmed that "if for some reason a bank or other financial institution should force [Marion] to pay that debt and she is not indemnified by [Pearson] for said debt, he exposes himself to a motion to adjudge in contempt." He reiterated that Pearson must hold Marion harmless for the entire debt. However, after so finding, the Family Court declared that Marion's motion to adjudge Pearson in contempt was still premature "because she ha[d] not been forced to pay the debt" by Rockstone. Likewise, in the written order of July 3, 2009, memorializing this bench decision, the Family Court stated that Pearson was not in contempt because the Family Court's previous orders "call[ed] for indemnification and no [j]udgment has entered against [Marion] for the monies owed on the line of credit." Though noting that it seemed to be a forgone conclusion that Marion would be held liable to Rockstone, the Family Court still held that it could not "presuppose what the Superior Court will do in that civil proceeding." Accordingly, the order of July 3, 2009 did not adjudge Pearson in contempt.

Although the contempt sanction was not yet available, the Family Court justice did order "pursuant to the parties' * * * [s]ettlement [a]greement, [that] * * * Pearson will pay the reasonable fees and costs related to the necessity of bringing this [contempt] action, as well as the fees and costs of [Marion] having to defend herself in the civil action [against Rockstone]." From the bench, the Family Court justice explained that Marion "has incurred what this Court finds are reasonable costs for her appearance here today and leading up

4. In so ruling, the trial justice essentially found that Marion and her father complied with paragraph 7 of the settlement agreement, which "obligated her to at least try to make every effort to transfer $50,000 of this line of credit to herself."

to today and for the work done." He also found that the settlement agreement is "clear" that if one party's misdeeds cause the other party to take legal action, the latter is entitled to have her fees and costs paid by the former. "[B]ecause these fees were incurred solely by [Pearson's] actions, not those of [Marion]," the Family Court "order[ed] that these fees are the responsibility of [Pearson]." Based on an affidavit filed with Marion's motion, the Family Court determined that "said fees and costs are $3,097.50."

On July 14, 2009, Pearson timely appealed the Family Court order to challenge the award of attorney's fees and costs to Marion. *See* G.L.1956 § 14–1–52(a) (permitting appeals from "any * * * order, decision, or verdict of the [F]amily [C]ourt").

## II

## Standard of Review

▮ If there is a legal basis upon which a trial justice awarded attorney's fees, this Court reviews that award for an abuse of discretion. *Blue Cross & Blue Shield of Rhode Island v. Najarian*, 911 A.2d 706, 709 (R.I.2006); *Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co.*, 763 A.2d 590, 598 (R.I. 2000) (establishing that "[a]n award of attorneys' fees by a trial justice is subject to review for abuse of discretion"); *see also Harson v. Harson*, 82 R.I. 71, 74, 75, 105 A.2d 812, 814 (1954) (applying the abuse of discretion standard to evaluate a Family Court justice's denial of attorney's fees to a litigant who sought a judgment of contempt against her ex-spouse for nonpayment of child support). However, where the legal basis for awarding fees is at issue, we review that question of law *de novo*. *Najarian*, 911 A.2d at 709.

## III

## Analysis

Pearson contends that the Family Court justice abused his discretion by awarding attorney's fees to Marion because Pearson prevailed with respect to Marion's motion to adjudge him in contempt. Pearson maintains that it would be "counterintuitive" to require "the party that was forced to defend against the nonprevailing party's motion" to pay that party's costs and fees. He also argues that "the Rhode Island General Laws pertaining to Domestic Relations do not expressly authorize an award of [a]ttorney's fees to a nonprevailing party" and that the Family Court justice should have considered certain statutory factors before granting the award.

Conversely, Marion asserts that the Family Court justice did not abuse his discretion because paragraph 27 of the settlement agreement permits Marion, the non-bankrupt party, to obtain "whatever claims" and "whatever remedies" against Pearson, the bankrupt party, after Pearson's bankruptcy exposed Marion to their joint creditor. She explains that paragraph 27 states that the bankrupt party can be responsible for attorney's fees that the non-bankrupt party incurs in the pursuit of her rights under this paragraph. We agree with Marion that the settlement agreement provides a contractual basis for awarding attorney's fees and affirm the Family Court's decision to award them to her.

## A

## Prevailing Party Prerequisite

▮ "This Court adheres to the 'American rule' that litigants generally are responsible for their own attorneys' fees and costs. * * * However, attorneys' fees may be appropriately awarded, at the discretion of the trial justice, given proper

contractual or statutory authorization." *Downey v. Carcieri*, 996 A.2d 1144, 1153 (R.I.2010) (quoting *Napier v. Epoch Corp.*, 971 A.2d 594, 598 n. 4 (R.I.2009)).[5] In this case, attorney's fees were awarded pursuant to a contractual provision.

Pearson is correct that prevailing in an action often is a precondition of an attorney's fee award. *See, e.g.*, G.L.1956 § 9–1–45 ("The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract * * *."). However, with respect to this settlement agreement, which the parties do not dispute unambiguously requires no such prerequisite, Pearson's argument fails. *Rodrigues v. DePasquale Building and Realty Co.*, 926 A.2d 616, 624 (R.I.2007) (stating that "[u]nder established contract law principles, when there is an unambiguous contract and no proof of duress or the like, the terms of the contract are to be applied as written") (quoting *Gorman v. Gorman*, 883 A.2d 732, 739 n. 11 (R.I.2005)). We decline to read nonexistent terms or limitations into a contract. *See Perez v. Aetna Life Insurance Co.*, 150 F.3d 550, 557 (6th Cir.1998) ("[Per] the basic principle of contract law * * * courts are not permitted to rewrite contracts by adding additional terms."); *Morrisseau v. Fayette*, 164 Vt. 358, 670 A.2d 820, 826 (1995) ("[W]e affirm this construction of the contract as the most consistent with the unambiguous language and our obligation not to read additional terms into the contract.").

Paragraph 27 states that Marion, the non-bankrupt party who is facing debt de-

mands from the parties' joint creditor, is "entitled to make whatever claims and seek whatever remedies permissible by law and * * * this [a]greement." Furthermore, Marion "may seek to have [Pearson,] the bankrupt party[,] meet and pay all costs, including reasonable attorney's fees incurred by [Marion,] the non-bankrupt party[,] in pursuing * * * her rights pursuant to remedies under this subparagraph." Nowhere in paragraph 27 does it require that Marion must first prevail in her claims against Pearson before she is entitled to receive attorney's fees from him. The only stipulations that paragraph 27 puts on Marion receiving such an award is that the fees must be sought from the "bankrupt party," the fees must be "reasonable," and that the fees must be incurred in "pursuing * * * rights pursuant to remedies under this subparagraph." We hold that it was not an abuse of discretion for the Family Court justice to find that Marion's motion to adjudge Pearson in contempt was within the realm of pursuing her rights under paragraph 27.[6] It was Pearson who triggered the instant post-divorce litigation by filing for bankruptcy, thus leaving Marion exposed to the line of credit debt. We cannot disagree that her "fees were incurred solely by [Pearson's] actions, not those of [Marion]," who was attempting to vindicate her rights caused by Pearson's bankruptcy when she filed the contempt motion and defended herself against Rockstone's claim. Given Marion's likely liability to Rockstone and Pearson's failure to hold Marion harmless on the debt, the fees Marion incurred in

---

5. In certain circumstances, not applicable here, it also is permissible for courts to access their inherent powers to award attorney's fees in the interest of "fashion[ing] an appropriate remedy that would serve the ends of justice." *Moore v. Ballard*, 914 A.2d 487, 489 (R.I. 2007) (quoting *Vincent v. Musone*, 574 A.2d 1234, 1235 (R.I.1990)).

6. To this end, we note that it may be permissible for Marion to obtain additional attorney's fees relative to her defending against this instant appeal, since they may be related to Marion "pursuing * * * her rights pursuant to remedies under [paragraph 27]."

moving to adjudge Pearson in contempt and defending against Rockstone's civil action were, as the trial justice assessed, "reasonable."

■ Additionally, there is no indication that awarding attorney's fees to Marion based on the settlement agreement countervails public policy and is therefore unenforceable. *See Mendez v. Brites,* 849 A.2d 329, 338 (R.I.2004) ("[T]his Court may deem contractual provisions that violate public policy to be unenforceable."). Though Pearson argues that G.L.1956 § 15–5–16, pertaining to domestic relations, does not expressly authorize an award of attorney's fees to a nonprevailing party, we hold that these provisions do not apply to the instant contract dispute, nor does § 15–5–16 expressly disallow awarding fees to a nonprevailing party. Moreover, our Legislature has not "ma[de] an adequate declaration of public policy which is inconsistent with the contract's terms." *Shadis v. Beal,* 685 F.2d 824, 833—34 (3d Cir.1982); *see also Ryan v. Knoller,* 695 A.2d 990, 992 (R.I.1997) (holding that an intoxication exclusion in a rental insurance agreement violated the General Assembly's "strong public policy in favor of insurance coverage for motor vehicle rental companies"). As such, we are not persuaded to disturb the arms-length settlement agreement between Marion and Pearson. Indeed, "[i]t is a basic tenet of contract law that the contracting parties can make as 'good a deal or as bad a deal' as they see fit * * *." *Rodrigues,* 926 A.2d at 624 (quoting *Durfee v. Ocean State Steel, Inc.,* 636 A.2d 698, 703 (R.I.1994)).

## B

### Consideration of the § 15–5–16 Factors

Pearson also incorrectly contends that the Family Court justice erred when he failed to consult § 15–5–16 before award-

ing fees to Marion. Section 15–5–16(b) lists factors that the Family Court shall consider when awarding attorney's fees relative to granting a "petition for divorce, divorce from bed and board, or relief without the commencement of divorce proceedings * * *." Section 15–5–16(a). Here, as the attorney's fees at issue were based on a contractual provision triggered by Pearson's bankruptcy and not awarded during one of the three events encompassed by § 15–5–16(a), it was not necessary or proper for the Family Court justice to consult these factors. Accordingly, we hold that the Family Court correctly awarded attorney's fees to Marion without considering § 15–5–16.

## IV

### Conclusion

In accordance with the foregoing, we affirm the order of the Family Court. The associated documents may be remanded to that court.