Supreme Court

No. 2015-22-Appeal.
No. 2015-146-Appeal.
(KC 13-639)

Tri-Town Construction Company, Inc.    :

v.    :

Commerce Park Associates 12, LLC et al.    :

Present: Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

# O P I N I O N

**Justice Flaherty, for the Court.** The defendants, Commerce Park Associates 12, LLC (CPA) and Nicholas E. Cambio, appeal to this Court, arguing that the judgment of the Superior Court in favor of the plaintiff, Tri-Town Construction Company, Inc., was infected with four errors. The defendants argue that the trial justice erred when he granted summary judgment in favor of the plaintiff's claims for (1) breach of a promissory note and (2) breach of a guaranty of the note. CPA also challenges (3) the trial justice's dismissal of its counterclaim pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure for payments made to the plaintiff and for various expenses it incurred. Finally, the defendants contend that the trial justice erred by (4) granting the plaintiff's motion for attorney's fees. Addressing these issues in order, we affirm in part and vacate in part the judgments of the Superior Court.

## Facts and Travel

## The Underlying Transactions

In 2004, CPA and Cambio agreed to purchase property in West Greenwich from Tri-Town in hopes of developing a 140-unit "over 55" residential condominium. The parties entered into a purchase and sale agreement pursuant to which Tri-Town conveyed the unimproved wooded lot located on the New London Turnpike to CPA, and Cambio signed a promissory note (the note), "individually, as guarantor," for $4,500,000.[1] In August 2006, the transactions closed. CPA paid $136,000 and executed the promissory note that is at the heart of this dispute.[2] The note obligated CPA to pay the principal sum of $4,363,000 plus 7 percent annual interest to Tri-Town. Under the note, principal-only payments of $6,000 per month were to be paid until January 2007, at which time interest began to accrue in the amount of $25,316.67 per month. Despite that accrual, however, the note called for interest-only payments of $10,000 per month until the "first Homebuyer closing." At that time, and at each closing thereafter, the payment due to Tri-Town included accrued interest and a portion of the principal.[3] However, there was no deadline set forth in the note specifying when the first "[h]omebuyer closing" was to occur. The note, which was set to mature on July 31, 2016, was secured by a mortgage on the property.

The note defined default as one or more of eight events, including the "[n]onpayment of any installment of principal and/or interest due under this Note when it shall become due and payable * * *." A late fee of 5 percent was also assessed on any overdue payment made after ten days. The defendants agreed to remain primarily liable on the "Note and Security Instrument

---

[1] CPA also made a $10,000 deposit when the purchase and sale agreement was executed.

[2] A promissory note is "[a]n unconditional written promise, signed by the maker, to pay absolutely and in any event a certain sum of money either to, or to the order of, the bearer or designated person." Black's Law Dictionary 1226 (10th ed. 2014).

[3] An illustration of the payment schedule was attached as "Exhibit A" to the note.

* * * unaffected by * * * any other matter * * *." Of particular significance to this appeal, the note provided that defendants would "pay the reasonable legal and other fees and expenses of [Tri-Town] * * * reasonably incurred connected with or incidental to * * * the collection or enforcement of an Event of Default * * *." Finally, imbedded in the last two pages of the note, directly above the signature line, was the following language:

> "Whomever signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. HOLDER may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note."

Cambio signed that provision twice: once as CPA's manager, and once individually as guarantor.

### The Default, the Bankruptcy Proceedings, and the Foreclosure

For two years after the closing and the execution of the documents, CPA satisfied all its obligations and also invested a significant sum of money into developing the property. Those expenditures included engineering fees, legal expenses to obtain needed zoning and regulatory relief, and expenses related to developing the land for the project. According to CPA, in the midst of its efforts, the national economy collapsed and the "Great Recession" ensued. This, CPA maintained, created an environment wherein it could no longer obtain financing, because "[t]he era of easy money ended." By September 2008, CPA had ceased making payments under the note.

In early 2012, Tri-Town initiated foreclosure proceedings. After Tri-Town issued a notice to CPA of the impending foreclosure, CPA filed a petition for Bankruptcy in the United

States Bankruptcy Court under Chapter 11 of the United States Bankruptcy Code. Undeterred, Tri-Town sought and secured relief from the automatic stay that accompanied the bankruptcy filing. Eventually, the Bankruptcy Court dismissed the case and in April 2013, Tri-Town purchased the property at a public auction for $2,250,000.

## The Superior Court Proceedings

In an effort to capture the difference between the $6,161,894.95 CPA owed to it and the $2,250,000 that it had paid at the auction, Tri-Town filed a two-count complaint against CPA and Cambio, seeking to secure the $3,911,894.95 deficiency. Count 1 of the complaint alleged a breach of the note against both defendants, and count 2 alleged a breach of guaranty against Cambio. In response, defendants raised several affirmative defenses, including frustration of purpose. The defendants also filed separate counterclaims: Cambio sought a declaratory judgment that the language in the note was legally insufficient to establish a binding guarantee and CPA counterclaimed for deposits, for interest paid, and for the value of the investments that it had made to the property.

In due time, Tri-Town moved for summary judgment on both counts in its complaint. Regarding count 1, it argued that there was no dispute that the note was valid and binding, that the note itself defined nonpayment of any installment, that defendants had stopped making payments in accordance with the terms of the note, and that Tri-Town had provided notice of default to each defendant. With respect to count 2, Tri-Town argued that there was no dispute that Cambio had executed the note as a guarantor and that the note was legally sufficient to create a binding obligation on his part. Tri-Town also moved to dismiss CPA's counterclaim pursuant to Rule 12(b)(6), and to strike both defendants' affirmative defense of frustration of purpose and Cambio's counterclaim pursuant to Rule 12(f).

- 4 -

The defendants objected to plaintiff's motions. They maintained that summary judgment was inappropriate because questions of material fact existed to support their defenses; the "entire purpose" of the sale, they said, was "[t]he development of the site from a less than valuable thirty acres zoned commercial * * * to a residential site of 140 units for an 'over 55' age restricted condominium * * * wherein both Tri-Town and CPA 12 would profit." Tri-Town's foreclosure was the "last straw," they argued, and a tacit admission by Tri-Town that the purpose of the entire transaction was frustrated. The defendants pointed to the fact that plaintiff had received twice the market value for the property and that the repayment schedule under the note hinged, in part, on homebuyer closings as evidence that plaintiff had a continuing relationship to the enterprise. Cambio also disputed the allegation that he was obligated as a guarantor.

In addition to his objection to Tri-Town's motion for summary judgment, Cambio filed a cross-motion for summary judgment on his counterclaim for a declaratory judgment. In that cross-motion, Cambio argued that he was under no duty to guarantee the note because the instrument failed to establish a legally binding secondary obligation. In support of his argument, he pointed to the fact that there was no separate writing, that there were no separate terms establishing a guaranty agreement or an obligation in the note, and that there was no recitation of consideration in the note.

Tri-Town filed a reply to defendants' objection to its motion for summary judgment that also included an objection to Cambio's cross-motion for summary judgment. Tri-Town reiterated its position that there were no disputed material facts and that, if summary judgment was granted in its favor, Cambio's cross-motion was moot and his counterclaim should be dismissed. Tri-Town also argued that the frustration of purpose defense did not apply because

- 5 -

CPA and Cambio's promise to pay money under the note in no way hinged on the nonoccurrence of a recession and, therefore, frustration of purpose did not apply.

There were a series of hearings conducted to dispose of the issues raised in the motions and cross-motions. At the first hearing, the trial justice heard arguments on Tri-Town's motion for summary judgment, defendants' objection thereto, and Cambio's cross-motion for summary judgment. The defendants pressed their argument that the note was part of a "larger transaction" between the parties to develop the property as evidenced by the payment schedule, and that no one anticipated that construction financing would become unavailable when the sale was negotiated. At the hearing on Tri-Town's motion for summary judgment, counsel for defendants argued:

> "there's sufficient material facts that would trigger such a – a jury could find from the facts as I'm outlining them that there was, because of the doctrine of frustration of purpose, they could find just as I'm proposing that there was no – that the parties – essentially because of the impossibility due to – I don't want to go as far as say impossibility – impracticability in the frustration of the purpose of the overall transaction, could find that there was essentially a nullification, which is essentially what it is, of the contract. They got their property back, and, you know, everybody can go home."

Although they stopped short of categorizing Tri-Town as a co-venturer, defendants maintained that, with the facts as they were, a jury could find in their favor under the doctrine of frustration of purpose. The trial justice rejected this argument without articulating a reason.

With respect to his counterclaim, Cambio argued that there were three deficiencies in the note that rendered his guaranty unenforceable: the note did not set out the identity of the guarantor or what was to be guaranteed; the guaranty was not in a separate writing; and the note failed to recite any consideration. The trial justice rejected each of these arguments. He found that the consideration that ran to CPA was sufficient to bind Cambio because he was CPA's

manager. He also rejected the contention that, to be effective, a guaranty must be set out in a separate writing. The trial justice granted Tri-Town's motion for summary judgment and denied Cambio's cross-motion. An order entered for $3,911,894.95, plus postjudgment interest at the contractual rate of 7 percent per year entered from the date Tri-Town filed its complaint. The matter of attorney's fees and Tri-Town's motion to dismiss CPA's counterclaim were continued.

The parties returned for argument on the remaining motions as well as on Tri-Town's request for an entry of final judgment. CPA admitted that its counterclaim was based on the same theory as its affirmative defense; that the purpose of the contract had been "vitiated." Despite the trial justice's ruling on the issue in the earlier hearing, CPA nonetheless argued that it was entitled to the return of its money. Again, without articulating his reasoning, the trial justice granted Tri-Town's motion to dismiss CPA's counterclaim. After that, the trial justice granted defendants' request for a continuance to review the motions regarding Tri-Town's request for attorney's fees.

The parties appeared one last time on the pending motion. Although defendants conceded that the note provided for attorney's fees, they challenged plaintiff's request principally on two grounds. First, defendants contended that the fees were neither reasonable nor necessary. And second, they contended, plaintiff's affidavit, submitted by its own attorneys, was insufficient, because an affidavit from another attorney indicating the necessity and reasonableness of the fees was required before the court could award plaintiff attorney's fees. The plaintiff responded that it was prepared to have the hearing continued so that it could call an outside attorney to give expert testimony on the reasonableness of its fees. However, the trial justice found that to be unnecessary. He observed that the note clearly provided for attorney's

fees and, after reviewing the affidavits and itemized bills, that the fees were reasonable and well documented. The trial justice awarded plaintiff $43,227.25 in attorney's fees.

## Analysis

### A

### Breach of Promissory Note and Breach of Guaranty

### 1

### Standard of Review

We review a hearing justice's grant of summary judgment de novo. See Sullo v. Greenberg, 68 A.3d 404, 406 (R.I. 2013). "Examining the case from the vantage point of the trial justice who passed on the motion for summary judgment, '[w]e view the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law[,] we will affirm the judgment.'" Id. at 406-07 (quoting Sacco v. Cranston School Department, 53 A.3d 147, 150 (R.I. 2012). Summary judgment is "an extreme remedy, * * * [and] to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that 'prove[s] the existence of a disputed issue of material fact[.]'" Id. at 407 (quoting Mutual Development Corp. v. Ward Fisher & Co., 47 A.3d 319, 323 (R.I. 2012)).

### 2

### Breach of Promissory Note

On appeal, defendants argue that the hearing justice erred when he granted plaintiff's motion for summary judgment on the claim of breach of promissory note because there were genuine issues of material fact about whether the purpose for which the parties contracted was frustrated when the national economy collapsed. We do not agree.

CPA's sole argument in defense of its failure to pay the note is based on the legal doctrine of frustration of purpose. The main thrust behind that doctrine is to excuse a party from performing under a contract on the occurrence of an intervening or supervening condition that substantially frustrates the main purpose for which the parties entered into the contract in the first place. For the doctrine to apply, the parties, in making the contract, must have been operating under a basic assumption that the intervening or supervening event would not take place. See Restatement (Second) Contracts 2d § 265 (1981). To succeed on a theory of frustration based upon the occurrence of a supervening event, a party must show that: "(1) the contract is partially executory, (2) a supervening event occurred after the contract was made, (3) the nonoccurrence of the event was a basic assumption on which the contract was made, (4) the occurrence frustrated the parties' principal purpose for the contract, (5) the frustration was substantial." Iannuccillo v. Material Sand & Stone Corp., 713 A.2d 1234, 1238 (R.I. 1998).

The defendants say that the "only purpose" underlying the transaction between the parties was the transformation of "the site from a less valuable highway/commercial zoned 30 acres without public water or sewer into * * * a 140 unit, age restricted condominium * * *." To support this proposition, they cite to what they describe as the "atypical" payment terms of this particular commercial promissory note. First, defendants argue that the fact that the repayment schedule required interest-only payments until the "first [h]omebuyer closing" was conducted demonstrated Tri-Town's continuing interest in the transaction. This, they say, is an indication of the parties' assumption that CPA would be able to obtain the necessary zoning approvals and construction financing, and build the infrastructure and individual units. When that all happened, "[t]he parties would then begin to reap the benefit of their bargain." Second, defendants argue that the lack of a deadline in the note as to when the first closing needed to occur—and,

- 9 -

therefore, plaintiff's willingness to receive interest-only payment for an indefinite amount of time—demonstrated plaintiff's ongoing participation in the project. The plaintiff counters that, rather than representing any kind of joint venture, the purpose of the "transaction was a simple sale of land," the note evidenced the amount due and agreed payment schedule, and the guaranty secured payment.

It is our opinion that frustration of purpose is inapplicable here and that, even if it were, the purpose of the contract was not so frustrated by the economic decline that occurred after the parties entered into the contract. As <u>comment a</u>. to § 265 of the Restatement explains:

> "First, the purpose that is frustrated must have been a principal purpose of that party in making the contract. It is not enough that he had in mind some specific object without which he would not have made the contract. The object must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense. Second, the frustration must be substantial. It is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss. The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract. Third, the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made." <u>Id.</u> at 335.

As <u>comment a</u>. of § 265 makes clear, for the doctrine of frustration of purpose to apply, both parties to the contract must share in the assumption that the particular purpose would not be frustrated. That means that if Tri-Town did not share defendants' assumption that the condominium would be developed, frustration of purpose does not apply. As it turns out, there is nothing in the record to support defendants' claim that Tri-Town entered into the sales contract on the basis that defendants would successfully turn the property into an age-restricted condominium. The fact that Tri-Town was willing to receive interest-only payments until the "first [h]omebuyer closing" or that it retained a security interest in the property does nothing to

establish that the parties were somehow co-venturers in the development of the property. Rather, this shows Tri-Town's means of ensuring payment for the land it sold to defendants.

Indeed, even if Tri-Town had shared in the assumption that the condominium would be successful, defendants' frustration was not "substantial" as required by § 265, comment a. at 335 of the Restatement. A party's obligation under a contract "will not be set aside merely because the performance under the contract becomes more difficult or expensive than originally anticipated." Iannuccillo, 713 A.2d at 1239. "The ultimate inquiry * * * for the purposes of accepting or rejecting a defense of [frustration of purpose] is whether the intervening changes in circumstances were so unforeseeable that the risk of increased difficulty or expense should not be properly borne by [the nonperforming party]." Grady v. Grady, 504 A.2d 444, 447 (R.I. 1986). In turn, that risk of increased difficulty or expense must be so severe that "the purpose underlying the contract must be totally and unforeseeably destroyed." City of Warwick v. Boeng Corp., 472 A.2d 1214, 1219 (R.I. 1984) (purpose of contract not frustrated by elimination of statutory requirement that municipal approval be sought before property could be sold). Here, the difficulty in obtaining the requisite financing certainly made the prospect of building an age-restricted condominium more expensive, but it made doing so far from impossible. Moreover, the record reveals that defendants are sophisticated parties with substantial knowledge and experience in real estate development and all the risks that it entails. Because the frustration of purpose doctrine fails to excuse defendants' nonpayment under the promissory note, we affirm the Superior Court and uphold summary judgment for Tri-Town.

**3**

## Breach of Guaranty

Cambio next argues that the guaranty that he signed is not enforceable because (1) it was not contained in a separate writing; (2) there were no specific terms for the guaranty; (3) the guarantor's identity is not provided; and (4) there is no recitation of consideration.

Cambio has espoused that "[g]uaranty and surety agreements should be separate and independent contracts." That may be true, but he has not pointed us to any authority that supports his proposition that they must be contained in separate writings. Indeed, several jurisdictions and treatises support the enforceability of guaranties contained within the same contract or obligation. See, e.g., Tripps Restaurants of North Carolina, Inc. v. Showtime Enterprises, Inc., 595 S.E.2d 765, 767 (N.C. Ct. App. 2004) ("[B]oth contracts (between creditor and primary obligor and between creditor and guaranty) may be contained in the same instrument."); Robey v. Walton Lumber Co., 135 P.2d 95, 102 (Wash. 1943) ("The fact that both [the contract and guaranty] are written on the same paper or instrument does not affect the independence or separateness of the one from the other."); 38 Am.Jur.2d Guaranty § 34 at 984 (2010) ("The primary contract and the guaranty may be contained in the same document."). In short, the fact that the guaranty was not in a separate writing apart from the note does not make defendant Cambio's promise to guaranty payment unenforceable.

Next, Cambio argues that the guaranty is unenforceable because it is not contained in a separate, "special writing" and does not adequately state the obligation being undertaken or identify the guarantor. For support, he cites the Statue of Frauds, G.L. 1956 § 9-1-4(4)(7), which says "[n]o action shall be brought: * * * [w]hereby to charge any person upon his or her special promise to answer for the debt, default, or miscarriage of another person * * * unless the promise

or agreement upon which the action shall be brought * * * shall be in writing, and signed by the party to be charged therewith * * *." He argues that the use of the term "special promise" mandates that a writing be specific about the terms of a promise to act as a guarantor and that it be separately and specifically stated. We do not agree. The guaranty language contained in the note unambiguously provides that any person who is the guarantor is obligated to keep all the promises made in the instrument. It is our opinion that the language is clear and unambiguous. Cambio personally guaranteed the amount due under the note and was aware that as a guarantor he "may be required to pay all of the amounts owed under this [n]ote." He has not directed us to any authority, persuasive or otherwise, that convinces us that a separate writing for all guaranty contracts is required.

Hand in hand with Cambio's argument that the guaranty lacks specificity is his argument that the guaranty fails to specifically identify him as guarantor because he was not mentioned in the line that said "[a]ny person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obliged to keep all of the promises made in this Note." This argument is facially without merit. Directly below this language was the line providing for the signature of the "Guarantor," which Cambio admits he signed. Suffice it to say this adequately identifies Cambio as the guarantor.

Cambio's last salvo into the unenforceability of the guaranty is his argument that the guaranty contract does not recite the necessary consideration to him for assuming the secondary obligation. We have said that "consideration consists either in some right, interest, or benefit accruing to one party and some forbearance, detriment, or responsibility given, suffered, or undertaken by the other." Hayes v. Plantations Steel Co., 438 A.2d 1091, 1094 (R.I. 1982); see also Miller v. Metropolitan Property and Casualty Insurance Co., 111 A.3d 332, 341 (R.I. 2015)

("Consideration is simply '[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee; that which motivates a person to do something.'" (quoting Black's Law Dictionary 370 (10th ed. 2014))). Although a valid guaranty must be supported by consideration, there is no requirement that the guarantor receive a direct benefit. Indeed, this Court has held that "[w]hen a corporate officer agrees to be liable for a debt of the corporation, it is not necessary for consideration to move to the officer personally. It is enough if the corporation receives the consideration." Katz v. Prete, 459 A.2d 81, 86 (R.I. 1983).

Tri-Town's promise to grant a loan to CPA in exchange for Cambio's promise to guaranty repayment in the event CPA was unable to repay it was sufficient consideration. Although some guarantees are supported by separate consideration that flows directly to the guarantor, a guarantor who is also a corporate officer need not receive a separate benefit. See Katz, 459 A.2d at 86; see also Restatement (Third) Suretyship & Guaranty § 9(2)(a) at 34-35 (1996) ("A secondary obligation does not fail for lack of consideration if * * * the underlying obligation is supported by consideration and the later creation of the secondary obligation was part of the exchange for which the obligee bargained[.]"). There is nothing in the record or in our case law that supports Cambio's argument that the guaranty is unenforceable because it fails to recite adequate consideration. For these reasons, we affirm the Superior Court's grant of summary judgment for Tri-Town on their breach of guaranty claim.

## B

## The Dismissal of CPA's Counterclaim

## 1

## Standard of Review

When we review the grant of a motion to dismiss pursuant to Rule 12(b)(6), we apply the same standard as the hearing justice. Woonsocket School Committee v. Chafee, 89 A.3d 778, 787 (R.I. 2014). That is, we confine ourselves to the four corners of the complaint, assume that the allegations set forth are true, and resolve any doubts in favor of the complaining party. Narragansett Electric Co. v. Minardi, 21 A.3d 274, 278 (R.I. 2011). A motion to dismiss may be granted only when it is established beyond a reasonable doubt that a party would not be entitled to relief from the defendant under any set of conceivable facts that could be proven in support of its claim. Ho-Rath v. Rhode Island Hospital, 115 A.3d 938, 942 (R.I. 2015).

## 2

## Analysis

In its counterclaim, CPA sought the return of the payments that it made to Tri-Town, including the deposit and interest it had paid and for the value of investments made to the property, under what it believed was the "frustrated contract." Before the hearing justice and this Court, CPA admitted that its counterclaim was based on the same theory as its affirmative defense: frustration of purpose. Accepting its allegations as true, as we must, it is nevertheless our opinion that CPA cannot escape the fact that frustration of purpose—an affirmative defense against a breach of contract claim—is not a theory of liability in an affirmative cause of action. For that reason, there is no set of facts that would entitle CPA to relief. We need not dwell on

this question any further; the hearing justice correctly granted Tri-Town's motion to dismiss CPA's counterclaim.

## C

## Awarding of Attorney's Fees

## 1

## Standard of Review

This Court has "staunch[ly] adhere[d] to the 'American rule' that requires each litigant to pay its own attorney's fees absent statutory authority or contractual liability." Shine v. Moreau, 119 A.3d 1, 8 (R.I. 2015) (quoting Moore v. Ballard, 914 A.2d 487, 489 (R.I. 2007)).  However, if there is a contractual basis for awarding attorney's fees, "then this Court will review a motion justice's actual award of attorney's fees for an abuse of discretion." Dauray v. Mee, 109 A.3d 832, 845 (R.I. 2015) (quoting Blue Cross & Blue Shield of Rhode Island v. Najarian, 911 A.2d 706, 709 (R.I. 2006)).

## 2

## Analysis

The defendants contend that the hearing justice abused his discretion by awarding attorney's fees to plaintiff because the fees were neither reasonable nor necessary.  They further argue that the affidavits submitted by Tri-Town, by its own attorneys, were insufficient because an affidavit from another attorney indicating the necessity and reasonableness of the fees was required before the court could award the fees.

The defendants aver that the hearing justice erred when he awarded Tri-Town legal fees for its unsuccessful motion for prejudgment attachment as well as for several discovery requests that they argue failed to comport with discovery rules.  Regarding the motion for prejudgment

attachment, defendants argue that, because a different hearing justice denied the motion, it was meritless, and, therefore, Tri-Town should not be awarded fees for prosecuting its motion. However, the fact that a motion has been denied, standing alone, is not enough to invalidate an award of legal fees. For instance, in Pearson v. Pearson, 11 A.3d 103, 105-08 (R.I. 2011), we considered a settlement agreement between former spouses that provided for reasonable attorney's fees when one of the spouses filed for bankruptcy and the other incurred legal fees as a result. The agreement said that "[e]ither party may seek to have the bankrupt party meet and pay all costs, including reasonable attorney's fees incurred by the non-bankrupt party in pursuing his or her rights * * *." Id. at 105-06 (emphasis omitted). The former wife sought to hold her ex-husband in contempt after he refused to indemnify her, as required by a court order, for claims made against her by a creditor on a joint line of credit. Id. at 106-07.

Although the trial justice found that the contempt motion was premature because the creditor had not yet obtained a judgment against her, the hearing justice nonetheless awarded the ex-wife attorney's fees for bringing the motion. Pearson, 11 A.3d at 109-10. On appeal, the defendant argued that, because he was the prevailing party on the motion, the trial justice should not have granted attorney's fees to his ex-wife. Id. at 108. We held that, because the settlement agreement did not require the party seeking the fees to be successful on the merits, the hearing justice did not abuse his discretion in awarding legal fees. Id. at 108-10.

Likewise, nowhere in the note at issue here is it required that Tri-Town must prevail in its claim against defendants before it is entitled to receive attorney fees from them. The note says that the

> "MAKER will pay the reasonable legal and other fees and expenses of PAYEE or any HOLDER reasonably incurred connected with or incidental to (i) the negotiation, closing and administration of the loan evidenced by this Note incidental to the

> collection or enforcement of an Event of Default, and (ii) the enforcement of any of the obligations of MAKER or rights of the HOLDER under this Note * * * by litigation or otherwise * * *."

The only stipulation that the note places on Tri-Town receiving attorney's fees is that they be "reasonably incurred." Without more, we cannot say that Tri-Town's attempt at protecting its rights under the contract by seeking prejudgment attachment was "meritless."[4]

However, we agree with defendants that the affidavits of Tri-Town's trial attorney do not suffice to prove the necessity and reasonableness of legal fees. In Colonial Plumbing & Heating Supply Co. v. Contemporary Construction Co., 464 A.2d 741, 744 (R.I. 1983), we held that "affidavits or expert testimony establishing the criteria on which a fee award is based should be required." Moreover, we said that "[i]t is well settled that attorneys 'are competent to testify as experts in determining what is a reasonable charge for legal services rendered.'" Id. (quoting Cottrell Employees Credit Union v. Pavelski, 106 R.I. 29, 35, 255 A.2d 162, 165 (1969)). What we did not say, however, was who should be providing the affidavits or expert testimony. We take this opportunity to embrace a consistent procedure on the award of attorney's fees and hold that the affidavits or testimony, as required by Colonial Plumbing & Heating Co., must be from counsel who is a member of the Rhode Island Bar and who is not representing the parties to the action in which fees are sought.

In the proceedings below, the trial justice declined Tri-Town's offer to present expert testimony from outside counsel to establish the reasonableness and necessity of its fees. We believe this was error and that the better practice would have been to consider that testimony. Although the standard of review of an order awarding attorney's fees is abuse of discretion, we

---

[4] We note that our review of this award is hampered by the fact that defendants did not provide a transcript of the hearing where a different justice of the Superior Court denied Tri-Town's motion for prejudgment attachment.

are of the opinion that this discretion can only be exercised after competent evidence from independent counsel has been admitted.  The fees in this case may very well be reasonable; however, we do not accept that affidavits and documents provided to the court by interested parties should be the basis for awarding them.  For instance, in Florida, "where a party seeks to have the opposing party in a lawsuit pay for attorney's fees incurred in that <u>same</u> action, the general rule * * * is that independent expert testimony is required."  <u>Sea World of Florida, Inc. v. Ace American Insurance Companies, Inc.,</u> 28 So.3d 158, 160 (Fla. Dist. Ct. App. 2010) (citing <u>Crittenden Orange Blossom Fruit v. Stone,</u> 514 So.2d 351, 352-53 (Fla. 1987)).  Likewise, the Vermont Supreme Court has observed that "the record is often best served on the issue of reasonableness by the receipt of expert testimony from independent counsel."  <u>Bruntaeger v. Zeller</u>, 515 A.2d 123, 128 (Vt. 1986) (quoting <u>Parker, Lamb & Ankuda, P.C. v. Krupinsky</u>, 503 A.2d 531, 534 (Vt. 1985)).  Therefore, we vacate the award of attorney's fees and remand this case to the Superior Court for it to consider the testimony or affidavit of an independent attorney regarding the reasonableness and necessity of Tri-Town's fees.

## Conclusion

For the reasons set forth in this opinion, we affirm in part and vacate in part the judgment of the Superior Court.  We affirm the Superior Court's decision to grant summary judgment in favor of the plaintiff on claims of the breach of promissory note and breach of guaranty, as well as its dismissal of CPA's counterclaim.  We reverse the decision to award Tri-Town attorney's fees without considering the testimony or affidavit of independent counsel.  The papers in this case are remanded to the Superior Court for proceedings consistent with this opinion.


Justice Indeglia did not participate.



**TITLE OF CASE:**   Tri-Town Construction Company, Inc. v. Commerce Park Associates 12, LLC et al.

**CASE NO:**   No. 2015-22-Appeal.
No. 2015-146-Appeal.
(KC 13-639)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   June 22, 2016

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, JJ.

**WRITTEN BY:**   Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**   Kent County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For Plaintiff:   Ryan J. Lutrario, Esq.
Vincent A. Indeglia, Esq.

For Defendants:  Richard G. Riendeau, Esq.