June 30, 2021

Angela Giguere Kumble et al.          :

          v.                          :          No. 2019-49-Appeal.
                                                 (PB 12-3338)
Michael Voccola et al.                :


Michael Voccola et al.                :

          v.                          :          No. 2019-47-Appeal.
                                                 (PB 12-3476)
Angela Giguere Kumble et al.          :


NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Angela Giguere Kumble et al.   :

       v.         :        No. 2019-49-Appeal.
                             (PB 12-3338)

Michael Voccola et al.     :


Michael Voccola et al.     :

       v.         :        No. 2019-47-Appeal.
                             (PB 12-3476)

Angela Giguere Kumble et al.   :


Present: Suttell, C.J., Robinson, Lynch Prata, and Long, JJ.

# O P I N I O N

**Justice Long, for the Court.** This matter arises from a long-fought battle between the beneficiaries and trustees of two trusts, culminating in the trustees seeking fees for their services and expenses, including attorneys' fees incurred on behalf of the trusts and interest owed on those fees. The beneficiaries appeal from a judgment of the Superior Court granting the trustees' petition for said expenses. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Procedural History

In April 2002, Frederick Carrozza, Jr. created a will that, upon his death, would form two testamentary trusts. Mr. Carrozza formed these trusts in part to prevent his father from obtaining control of his assets. Mr. Carrozza named two

- 1 -

"life-long friends," the plaintiff, Michael Voccola, and Daniel Shedd (collectively trustees), as co-trustees of both trusts; in return for their services as trustees, they were to receive "reasonable compensation." Mr. Voccola was also the executor of Mr. Carrozza's will. Mr. Carrozza passed away in August of that same year, leaving behind the defendants, his wife Angela Giguere Kumble and a daughter, Christine Tellefsen (collectively beneficiaries). At the time of his death, Mr. Carrozza owned multiple properties that became part of the trust estate, and Mr. Voccola permitted Ms. Kumble and Ms. Tellefsen to continue to manage those properties, as they had prior to Mr. Carrozza's death.

Shortly thereafter, Mr. Carrozza's father and other Carrozza family members filed suit against Mr. Voccola and the beneficiaries in an effort to impose a trust on the properties for the benefit of the Carrozza family. Initially, Mr. Voccola, Mr. Shedd, and the beneficiaries were aligned in defending their interests against the Carrozza family. They hired Evan Leviss (Attorney Leviss) to represent the estate and the beneficiaries in protracted litigation that came before this Court on two separate appeals.[1]

Unfortunately, however, the relationship between the trustees and beneficiaries fractured over time. On June 13, 2012, the trustees notified Attorney

---

[1] The two cases before this Court involving the Carrozza family were *Carrozza v. Voccola*, 962 A.2d 73 (R.I. 2009) (*Carrozza I*) and *Carrozza v. Voccola*, 90 A.3d 142 (R.I. 2014) (*Carrozza II*).

Leviss that they were removing him as counsel because they believed a conflict had arisen with his continued representation. A week later, Mr. Voccola informed the beneficiaries that he had retained the law firm of Duffy & Sweeney and intended to hire a third-party management company to oversee the trusts' properties because he had become frustrated with Ms. Tellefsen's management of the properties. Mr. Voccola disposed of one of the trust properties and used the proceeds to pay Duffy & Sweeney, without first disclosing to the beneficiaries his intention with regard to the proceeds.

On June 27, 2012, Ms. Kumble renounced her interest in both trusts and demanded that they be terminated, which would accelerate the distribution of assets to Ms. Tellefsen. According to the beneficiaries, Ms. Tellefsen simultaneously demanded, in writing, that the combined trust assets be distributed to her as a named residuary beneficiary.

Two days after Ms. Tellefsen's written demand to the trustees, Ms. Kumble and Ms. Tellefsen filed a two-count verified complaint for specific performance and injunctive relief in PB 12-3338. In their prayer for relief, the beneficiaries asked that the trustees distribute the trust assets to Ms. Tellefsen and be barred from making any further disbursements from the trusts, from transferring management of the trust properties "to a company or individual other than [the beneficiaries,]" and from removing the trusts' counsel, Attorney Leviss. In response, on July 5, 2012, the

trustees sought a writ of replevin in PB 12-3476, demanding that Ms. Kumble, Ms. Tellefsen, and Attorney Leviss return property and records belonging to the estate and trust, which the trial justice granted in part.

Thereafter, the beneficiaries and the trustees each filed counterclaims in the respective actions. The beneficiaries counterclaimed for breach of fiduciary duty and breach of the duty of loyalty.[2] As part of those counterclaims in PB 12-3476, the beneficiaries asked the court to determine that the trustees were not entitled to any further trustee or fiduciary fees and to repay the trust for money already paid to counsel hired on behalf of the trusts after the beneficiaries renounced their interests. In their counterclaim in PB 12-3338, the trustees alleged embezzlement and fraudulent conversion, unlawful appropriation, larceny, breach of fiduciary duty and duty of care, conversion, and tortious interference with business relations.

The beneficiaries' initial claims resolved in November 2012, when the trial justice granted their claim for specific performance and ordered distribution of trust assets to Ms. Tellefsen, subject to any fees awarded to the trustees. In December 2012, the parties entered into a consent order in PB 12-3338 that provided, in part,

---

[2] The beneficiaries' original counterclaim in PB 12-3476, filed on August 6, 2012, included counts for tortious interference with a judgment, breach of fiduciary duty, and breach of the duty of loyalty, and sought injunctive relief to prevent the trustees from transferring management of the trust properties to another company and to prevent them from removing Attorney Leviss. They later amended their counterclaim to claim only breach of fiduciary duty and breach of the duty of loyalty.

that if trust assets were "insufficient to pay for any expenses, fees or liabilities incurred in the administration of the Trusts and approved by the [c]ourt, Tellefsen and Kumble shall personally indemnify the Trustees[.]" The consent order also stated that certain trust assets were to be held in escrow by the beneficiaries' counsel. Therefore, the consent order terminated the trustees' access to trust assets. Additionally, the consent order provided, "All parties waive any right to appeal this [o]rder and agree that it shall be fully binding and enforceable upon entry by this [c]ourt."

A few days later, the trustees filed a "Petition for Instructions and Order for Indemnity Payment" in PB 12-3338 for fees that, they contended, were incurred in the administration of the trusts, including attorneys' fees owed to Duffy & Sweeney. The trustees argued that they were entitled to such fees under G.L. 1956 § 18-6-1 as a trust expense. The petition included a copy of the bill from Duffy & Sweeney which noted, "A finance charge of 1% per month will be assessed on all accounts past due 30 days." The trial justice ordered various on-account payments, subject to disgorgement, throughout the course of the litigation, over the objection of the beneficiaries—including in a motion to reconsider after the trial justice ordered one such payment.

After consolidation of the beneficiaries' action and the trustees' action, the trial justice held an eleven-day nonjury trial in October 2014, regarding the

beneficiaries' and trustees' counterclaims, the decision on which would impact the fees, if any, to which the trustees were entitled. In a written decision dated May 11, 2017, the trial justice awarded compensation to Mr. Voccola as executor of Mr. Carrozza's estate, as well as to the trustees for their work.[3] Because the trial justice determined that the trustees were entitled to fees, he then denied the beneficiaries' counterclaims for breach of fiduciary duty and breach of the duty of loyalty, thus resolving all of the beneficiaries' counterclaims. Likewise, he denied the trustees' counterclaims for embezzlement, fraudulent conversion, larceny, breach of fiduciary duties, and tortious interference with business relations.

Turning to the trustees' request to be indemnified for their attorneys' fees, the trial justice considered the beneficiaries' various arguments against payment of attorneys' fees, including that the fees incurred in pursuit of the trustees' right to compensation were merely "fees for fees." The trial justice noted that the consent order provided that the beneficiaries would indemnify the professional fees of the trustees if the trust assets were insufficient and concluded that he had both contractual authority, under the consent order, and statutory authority, pursuant to § 18-6-1, to award attorneys' fees. The trial justice granted the trustees' request for

---

[3] In a stipulation dated November 6, 2014, the parties had agreed to permit the Superior Court to determine the executor fees owed to Mr. Voccola. The parties agreed not to challenge the jurisdiction of the Superior Court to determine the executor compensation.

attorneys' fees, with the sole limitation that whether the trustees were entitled to fees after March 31, 2015, would be determined at a later date.[4] The trial justice ordered that the valuation of attorneys' fees would be determined in accordance with the procedures set forth in *Tri-Town Construction Company, Inc. v. Commerce Park Associates 12, LLC*, 139 A.3d 467 (R.I. 2016), which requires affidavits or expert testimony "from counsel who is a member of the Rhode Island Bar and who is not representing the parties to the action[.]" *Tri-Town Construction Company, Inc.*, 139 A.3d at 479-80. The valuation would also be determined during a future proceeding. Partial judgment entered on June 5, 2017; however, neither the trustees nor the beneficiaries appealed therefrom.

One month after the May 2017 decision, the beneficiaries sought release of all real estate, as well as partial release of the trust funds from the escrow account, arguing that the trustees were "substantially over-secured." The trustees objected and pointed out that the accrued legal fees were "subject to interest at the rate of 12% annually, compounded monthly[.]" The trial justice denied the beneficiaries' motion.

The trial justice issued a bench decision on January 17, 2018, after the parties had submitted affidavits from Rhode Island attorneys concerning the amount of the

---

[4] In rendering his decision, the trial justice divided the fees into various categories, including fees related to the trial and incurred through March 31, 2015, which was the last day of the attorneys' billing statement, and for fees incurred after that date.

- 7 -

requested attorneys' fees. The affidavit presented by the trustees made specific mention of the interest rate in the agreement with Duffy & Sweeney; the affidavit from the beneficiaries contained no such reference. The trial justice, after reviewing the affidavits, concluded that the affiants disagreed on four main points: the hourly rate billed; whether the "protracted hearings" were the joint responsibility of the parties; whether certain expenses were reimbursable; and whether the trustees' counsel was successful, a factor that the trial justice found went to the issue of the proportionality of the fees requested to the success of the litigation.

The trial justice accepted the trustees' expert legal counsel's opinion that the hourly legal-fee rate was reasonable based on the trustees' attorneys' experience and the circumstances of this case. He determined that neither side was more at fault for the protracted litigation and disallowed any reimbursement for costs of computer research and meals. Regarding whether the attorneys' fees award was proportional to the damages recovered by the trustees, the trial justice indicated that the action entailed more than the trustees recovering compensation for administering the trust and estate; the trial justice specifically noted that other claims made by the beneficiaries against the trustees were resolved in favor of the trustees. The trial justice granted the trustees' request for attorneys' fees in the full amount requested, $1,040,293.75, including fees incurred after March 2015, less $276,525 that had

previously been paid. Counsel for the beneficiaries noted at the conclusion of the hearing that prejudgment interest remained an outstanding issue in the case.

Thereafter, the trustees submitted a proposed order to implement the trial justice's decision, which included the addition of prejudgment interest to the attorneys' fees award. The beneficiaries objected to the proposed order, asserting that prejudgment interest was not appropriate. Furthermore, the beneficiaries contended that the fees were not "due or owing" until the trial justice awarded them, and, thus, there was no time value of money that would justify an award of interest prior to the January 2018 decision. They also argued that an interest award would be inequitable given that the time between the trial and the trial justice's decision and the ultimate award of fees was lengthy and no fault of the beneficiaries. "[A]t most, the [t]rustees are entitled to indemnification in accordance with § 18-6-1[,]" according to the beneficiaries. They also disputed the manner in which the trustees calculated the interest.

In their response to the beneficiaries' objection to the proposed order, the trustees countered that prejudgment interest applies to "claims such as these for payment of trust expenses from a trust[.]" The trustees contended that there is no distinction between trustee fees, on which the beneficiaries had previously paid prejudgment interest, and the reimbursement of legal fee expenses; the trustees argued that this was because both are trustee expenses under § 18-6-1 and are thus

both subject to prejudgment interest. They also argued that their claim for payment accrued many years ago when the legal fees were incurred. Finally, the trustees contended that their calculation of interest complies with Rhode Island law.

In March 2018, the trial justice held a hearing on the interest issue. During the hearing, counsel for the trustees provided the engagement letter between the trustees and Duffy & Sweeney to the trial justice, without objection from the beneficiaries, for the trial justice to confirm the terms of engagement as cited in the trustees' memorandum. During argument, the trustees contended that interest would be owed under either § 9-21-8 or § 18-6-1 and summarized for the trial justice how they calculated the interest. Counsel for the beneficiaries acknowledged that he had seen the engagement letter sometime after August 2012, but countered that, because neither § 18-6-1, § 9-21-8, nor § 9-21-10 discusses interest, those statutes were inapplicable in this case.

On April 16, 2018, the trial justice issued a written decision. He noted that the retainer agreement had been provided to counsel for the beneficiaries early in the case and that they did not object when the trustees presented a copy of the engagement letter to the court at the March 2018 hearing. The trial justice found that one percent per month, as called for in the agreement, was reasonable for bills unpaid after thirty days and that such a "service charge" qualified as a "reasonable expense[] and cost[] incurred in the execution of the trust" under § 18-6-1.

- 10 -

Subsequently, the beneficiaries filed a motion for reconsideration on the addition of interest. The trial justice treated the motion as a motion to vacate and determined that none of the grounds for vacating an order applied in that instance; he therefore denied the motion. An order implementing the denial of the beneficiaries' motion for reconsideration entered on June 26, 2018.

Final judgment in the consolidated cases was entered on September 5, 2018. The judgment indicated that reasonable attorneys' fees in the amount of $1,091,981.66 were to be indemnified by the trust and that an unpaid balance of $815,456.66 remained (as $276,525 had previously been paid).[5] Interest on the attorneys' fees was $431,654.26 and would accrue at the rate of $268.10 per day through the conclusion of any appeal. The beneficiaries timely filed a notice of appeal in each of the Superior Court actions, and the appeals were then consolidated before this Court.

Before this Court, the beneficiaries seek review of the bench decision issued on January 17, 2018, the written decision dated April 16, 2018, and the final judgment entered on September 5, 2018. They argue that the award of attorneys'

---

[5] In a stipulated order dated August 9, 2018, the parties agreed to add $50,000 to the award of attorneys' fees. The $1,091,981.66 figure included costs. The beneficiaries also attempted to retain their right to appeal the May 2017 decision by this stipulated order. We admonish the parties that the timeframe within which to file an appeal, as set forth in Article I, Rule 4 of the Supreme Court Rules of Appellate Procedure, cannot be enlarged except as set forth in that rule.

fees and costs was unreasonable, disproportionate, and an abuse of discretion. They also challenge the award of interest as contrary to the law and the facts.

## Award of Fees and Costs

"This Court reviews an award of attorney's fees for an abuse of discretion." *Sisto v. America Condominium Association, Inc.*, 140 A.3d 124, 129 (R.I. 2016) (quoting *Pearson v. Pearson,* 11 A.3d 103, 108 (R.I. 2011)). "It is well within the authority of the trial justice to make an attorneys' fee award determination after considering the circumstances of the case." *Id.* (quoting *Keystone Elevator Company, Inc. v. Johnson & Wales University*, 850 A.2d 912, 920 (R.I. 2004)). However, the Court does not "merely endorse[] the findings made by the lower court." *Hogan v. McAndrew*, 131 A.3d 717, 722 (R.I. 2016). "Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *Id.* (quoting *Independent Oil and Chemical Workers of Quincy, Inc. v. Procter & Gamble Manufacturing Company*, 864 F.2d 927, 929 (1st Cir. 1988)). This standard of review applies equally where it is a trustee seeking such an award. *See In re Quinn's Estate*, 64 R.I. 322, 322, 12 A.2d 275, 276 (1940).[6]

---

[6] The trustees contend that the "clearly erroneous" standard applies, as articulated in *Notarantonio v. Notarantonio*, 941 A.2d 138 (R.I. 2008), because the beneficiaries seek review of findings made in a nonjury trial. *See Notarantonio*, 941 A.2d at 144.

The beneficiaries contend that the trial justice erred by ignoring "material factor[s] deserving significant weight"—the proportionality of the fees to the underlying case and its outcome, as well as the trustees' limited success in the underlying case. The beneficiaries additionally contend that the trustees should not be awarded "fees for fees" and argue that this Court should make a "significant downward adjustment" of the fees incurred after the trustees and executor were fully compensated. The beneficiaries' arguments lack merit.

In *Tri-Town*, we clarified that the proper source of expert testimony to establish the reasonableness of legal fees is "a member of the Rhode Island Bar * * * who is not representing the parties to the action in which fees are sought." *Tri-Town Construction Company, Inc.*, 139 A.3d at 480. *Tri-Town* did not alter the criteria required for assessing the reasonableness of a fee; those factors, as established in *Colonial Plumbing & Heating Supply Co. v. Contemporary Construction Co., Inc.*, 464 A.2d 741 (R.I. 1983), remain unchanged:

> "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

> "(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

---

We need not address this argument because the clearly erroneous standard compels our deference to the trial justice's decision, as does the abuse-of-discretion standard.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent." *Colonial Plumbing & Heating Supply Co.*, 464 A.2d at 743.

After careful review of the January 17, 2018 bench decision, as well as the extensive record in this matter, we are satisfied that the trial justice acknowledged and properly weighed these factors; furthermore, he did so after assessing comprehensive affidavits from members of the Rhode Island Bar who did not represent the parties to the underlying action.

As the trial justice noted in his decision, the affiants agreed on many of the *Colonial Plumbing* factors, but diverged on four points—the hourly rate billed; whether the "protracted hearings" were the joint responsibility of the parties; whether certain expenses were reimbursable; and whether the trustees' counsel was successful. In evaluating the question of success, the trial justice explicitly considered the proportionality of the fee award to the underlying case as a whole, including the claims of breach of fiduciary duty and breach of duty of loyalty. He

found that "[t]he results obtained transcended the number of dollars recovered by way of fees" when evaluating the trustees' success on the "[s]ubstantial claims" asserted against them. Thus, although consideration of proportionality is not required under *Tri-Town* or *Colonial Plumbing*, the trial justice did, in fact, address proportionality in this case. It cannot be said that the trial justice ignored "material factors deserving significant weight" resulting in an abuse of discretion.

Moreover, it is important to note that the genesis of the fee award is in the May 11, 2017 decision, which the trial justice issued after an eleven-day trial on hard-fought claims. The trial justice awarded compensation owed to the executor and trustees, denied the substantial claims of wrongdoing alleged by the beneficiaries, and considered "perhaps the most pressing issue presented in this case: whether the [t]rustees are entitled to indemnification of the attorneys' fees and expenses they claim were incurred on behalf of the trust." He rejected the beneficiaries' various arguments against such indemnification, including their assertion that recovery would amount to "fees for fees." The trial justice concluded that he had authority to award attorneys' fees based upon § 18-6-1 and the parties' consent order, which, he noted, provided that the beneficiaries would indemnify the professional fees of the trustees if the trust assets were insufficient. The beneficiaries did not appeal the May 11, 2017 decision; consequently, the beneficiaries' second

- 15 -

argument, that the trustees should not be awarded fees for pursuing their own fees, is waived.[7]

## Award of Interest

The parties dispute which standard of review applies to the second issue presented on appeal. The beneficiaries frame the issue as whether there was "any legal basis" for the trial justice's decision to award interest in addition to the fee award. They argue that whether characterized as prejudgment interest or a "service charge," this Court should review the award of interest as an error of law subject to a *de novo* standard of review. Conversely, the trustees frame the issue as "whether and to what extent a finance charge * * * constitutes an indemnifiable expense" and contend that this Court should review the award as a question of fact and apply a clearly erroneous standard of review.

Even accepting the trustees' framing of the issue, the trial justice was required to do more than simply find facts. He was required to determine whether § 18-6-1 or § 9-21-10, if applicable, encompassed interest charges, which he did. This was a question of law that we review *de novo*. *See, e.g.*, *Morse v. Minardi*, 208 A.3d 1151,

---

[7] As discussed, the beneficiaries raised this argument during the October 2014 trial; the trial justice rejected the argument in his May 2017 decision when he determined which categories of fees to award. Although the beneficiaries attempted to retain their right to appeal that decision by way of the stipulated order entered in August 2018, as discussed previously, they did not appeal the May 2017 decision to this Court; thus, they have waived this argument.

1155 (R.I. 2019). "We review questions of statutory interpretation in a *de novo* manner." *Nunes v. Meadowbrook Development Co., Inc.*, 24 A.3d 539, 542 (R.I. 2011).

In challenging the award of interest as contrary to the law and the facts, the beneficiaries argue that there is no basis in Rhode Island law for granting interest on attorneys' fees; to the extent that the trial justice treated the interest as a "service charge" under § 18-6-1, they assert that he should have subjected the interest calculation to the *Tri-Town* analysis.

Additionally, the beneficiaries argue that because the trial justice awarded fees as indemnification under § 18-6-1 rather than as damages, interest is not appropriate under § 9-21-10 or the applicable caselaw. The purpose of prejudgment interest, according to the beneficiaries, is to "compensate a prevailing party for the loss of money over time[.]" However, they maintain that there is no loss of the time value of money here because the attorneys' fees were not due until the trial justice reached his decision on the fees.

Finally, the beneficiaries argue that the award was inequitable because it punished them "for a substantial passage of time that was entirely outside their control[,]" referring to the time between the trial and the trial justice rendering his decisions on the fees and interest. In closing, the beneficiaries contend that "[a]t most, the [t]rustees are entitled to indemnification in accordance with § 18-6-1.

- 17 -

Neither they nor their counsel are entitled to profit on any such indemnification award."

The sole argument raised by the beneficiaries on appeal relative to § 18-6-1 is that the award of interest should have been subject to the *Tri-Town* procedure. *Tri-Town* requires a non-interested attorney to opine on the reasonableness of attorneys' fees and for the opposing side to be given an opportunity for their own non-interested attorney expert to opine on the same. *Tri-Town Construction Company, Inc.*, 139 A.3d at 480. However, the issue in the case at bar is the reasonableness of an expense incurred in the execution of a trust. Interest, even when charged on attorneys' fees incurred, falls outside of *Tri-Town*. Additionally, we note that the interest rate charged under the retainer agreement in this case was the same rate as that provided under the prejudgment interest statute and is thus reasonable as a matter of law.

Furthermore, under our *de novo* review, we conclude that the trial justice did not err by awarding interest on attorneys' fees under § 18-6-1 as a reasonable expense incurred in the administration of the trust. Section 18-6-1 states, in relevant part, "Every trustee under any trust instrument, whether previously or subsequently made, shall be entitled to reasonable expenses and costs incurred in the execution of the trust, and also reasonable compensation for services rendered as trustee[.]" Bills incurred by trustees in the administration of a trust, including interest accrued

through no fault of the trustees, are a reasonable trust expense that is indemnifiable under § 18-6-1. As the trial justice found in his May 2017 decision, Mr. Voccola and Mr. Shedd, as trustees, were entitled to reasonable attorneys' fees in the administration of the two testamentary trusts at issue in this case. Thus, under our decision today, they are entitled to the interest on those fees, where, as here, the trustees were unable to pay the attorneys' fees as they became due because they no longer had access to trust assets.

The beneficiaries contend that the way in which the trial justice awarded the interest under § 18-6-1 deviated from how the interest had been treated until the time of the decision because the trustees requested prejudgment interest pursuant to § 9-21-10. This argument is contradicted by the record. The trustees argued before the trial justice that they would be entitled to interest under either § 18-6-1 or § 9-21-10. In addition, bills submitted to the trial justice for interim payments, beginning in December 2012, noted the interest rate, as did the affidavit from the trustees' attorney expert. Moreover, the trustees specifically raised this issue following the May 2017 decision, when they objected to the beneficiaries' motion for a partial release of the trust funds in escrow.

The beneficiaries' remaining arguments on appeal relate to interest under § 9-21-10. Because we hold that the trial justice properly awarded interest under § 18-6-1 as an expense reasonably incurred in the administration of the trust, we

need not address the beneficiaries' arguments unrelated to the basis of the trial justice's decision.

We take a moment to acknowledge that application of the law to the facts in this case results in an extraordinarily large sum of interest that must be paid to Duffy & Sweeney. This is the result of protracted and zealous litigation for which Duffy & Sweeney was hired in 2012, and for which the law firm extended credit in the form of forgoing timely payment of its bills in exchange for interest to be paid. Although the interest figure is large, we cannot, as the old adage states, allow "bad facts to make bad law."

**Conclusion**

For the foregoing reasons, the judgment of the Superior Court is affirmed. The record may be returned to that tribunal.


Justice Goldberg did not participate.


**Justice Robinson, dissenting.** I am compelled to record my respectful dissent to the majority's well-written and thoughtful opinion in this case which upholds the amount of attorneys' fees and interest awarded in the Superior Court.

While I acknowledge that there are powerful arguments that support the result reached by the majority, it is nonetheless my view that, in light of the staggering

amount of the attorneys' fees at issue and bearing in mind the substantial delays in the course of this litigation that are not attributable solely to the beneficiaries, the interests of justice would best be served by reducing by more than a *de minimis* amount the attorneys' fees and interest awarded in this case. *See In re Estate of Brown*, 206 A.3d 127, 136 (R.I. 2019) (reducing the amount of attorneys' fees award by twenty-five percent); *Tanner v. Town Council of Town of East Greenwich*, 880 A.2d 784, 802 (R.I. 2005) (reducing the amount of the attorneys' fees and costs to an amount the Court determined would be "just, fair, and proportional"); *see also Moore v. Ballard*, 914 A.2d 487, 489 (R.I. 2007) (invoking this Court's "inherent power to fashion an appropriate remedy that would serve the ends of justice") (internal quotation marks omitted); *Cadillac Lounge, LLC v. City of Providence*, 913 A.2d 1039, 1043 (R.I. 2007) (directing the entry of a fine in the amount of $500 rather than remanding the case for further proceedings by the Board "in the interest of judicial and administrative economy" and by relying upon this Court's "inherent power" to do so); *see generally Gibbons v. Gibbons*, 619 A.2d 432, 434 (R.I. 1993).



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Angela Giguere Kumble et al. v. Michael Voccola et al.<br><br>Michael Voccola et al. v. Angela Giguere Kumble et al. |
| **Case Number** | No. 2019-49-Appeal.<br>(PB 12-3338)<br><br>No. 2019-47-Appeal.<br>(PB 12-3476) |
| **Date Opinion Filed** | June 30, 2021 |
| **Justices** | Suttell, C.J., Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Michael A. Silverstein |
| **Attorney(s) on Appeal** | For Beneficiaries:<br><br>Robert M. Duffy, Esq.<br>Stacey P. Nakasian, Esq. |
| | For Trustees:<br><br>Mark W. Freel, Esq.<br>Alan I. Baron, Esq. |

SU-CMS-02A (revised June 2020)